IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NO LABELS,

          *Plaintiff*,

  v.

NOLABELS.COM INC.,

          *Defendant*.

Case No. _____

**COMPLAINT**

Plaintiff No Labels ("No Labels" or "Plaintiff"), by and through its attorneys, brings this Complaint against NoLabels.com Inc. ("Defendant") for claims arising from Defendant's unlawful and unauthorized use of Plaintiff's NO LABELS trademark. Specifically, Defendant has created and is actively promoting a website—hosted at the URL <nolabels.com>—designed to mimic No Labels' legitimate website for the purpose of deceiving the public, including voters, and sowing confusion about what No Labels stands for and which political leaders No Labels supports. Moreover, Defendant has apparently purchased advertisements on Google in certain states with the goal of steering individuals who are seeking information about No Labels on the Internet to Defendant's infringing website. Defendant's actions are a blatant attempt to trade on No Labels' goodwill and deceive individuals about the candidates, platform, and advocacy of No Labels. Not only does the fraudulent website mislead voters, but it also will likely discourage individuals from supporting No Labels' mission, including dissuading individuals from providing No Labels financial support. In addition to being deceptive and undemocratic, Defendant's actions constitute a clear violation of established trademark law and, absent emergency relief from this Court, these actions will continue to irreparably harm No Labels.

While No Labels welcomes dissenting political opinions and policy debates and, indeed, encourages intellectual and political discourse, Defendant may not, under the guise of free speech or fair use, misleadingly invoke and infringe No Labels' trademark rights, create a false association with No Labels, and then use the resulting misrepresentation to interfere with the electoral process. No Labels therefore brings this action to protect not only itself and its rights, but also the registered voters and potential donors who are being deceived by Defendant's unlawful actions.

## PARTIES

1. No Labels is a non-profit corporation organized under the laws of the District of Columbia with a principal place of business at 1130 Connecticut Avenue NW #325, Washington, DC 20036.

2. Upon information and belief, Defendant is a corporation organized under Delaware law.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because this case arises under the Anti-cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), and the Lanham Act, 15 U.S.C. §§ 1114(1), 1116, 1117 and 1125(a).

4. This Court has personal jurisdiction over the Defendant because Defendant is a citizen of Delaware, having been incorporated in the District of Delaware.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant resides in the District of Delaware and a substantial part of the events or omissions giving rise to the claim at issue in this litigation occurred in this judicial district.

**NO LABELS' MISSION, REGISTERED TRADEMARK, AND WEBSITE**

6. No Labels, a 501(c)(4) nonprofit corporation headquartered in Washington, DC, was established in 2009 to bridge the partisan divide in Washington by advancing commonsense reforms and convening officeholders from both major parties in an effort to find bipartisan solutions to the nation's problems.

7. No Labels has spent more than a decade working with centrist leaders from both sides of the political spectrum to effectuate change in public policy.

8. As reflected in its registration with the United States Patent and Trademark Office, No Labels has used the mark NO LABELS since at least 2010 and was granted registration for the mark, No. 3,946,066, on April 12, 2011, for use with "issue advocacy; public advocacy to promote awareness of public policy options and political issues" in Class 35 (the "No Labels Registered Trademark").

9. No Labels uses its NO LABELS mark on its website (the "No Labels Website") hosted at the URL <nolabels.org> (the "No Labels Domain"), which No Labels registered on December 15, 2009.  No Labels relies on the No Labels Website to promote its platform, provide information about its ideas, and publicize future events.

10. No Labels also uses its NO LABELS mark on the No Labels Website to increase awareness of the organization and grow support for its mission.

11. The No Labels Website includes an option for individuals to become involved in the organization, including by volunteering, donating, or signing up for communications.

12.  The No Labels Website makes clear that it is a centrist organization dedicated to providing the "commonsense majority" with options to encourage policy leaders to solve many of the biggest problems facing America.

13. No Labels is also working to gain ballot access in every state for a potential Unity Ticket for the 2024 presidential election that would offer an independent presidential and vice-presidential candidate option for voters unsatisfied with the choices available to them from the major political parties (particularly the Democratic and Republican Parties).

14. No Labels has not named candidates for the 2024 presidential and vice-presidential election and has not to date endorsed or offered support to any candidate.

15. No Labels states unequivocally on the No Labels Website that it is only contemplating offering its ballot line on the presidential and vice-presidential election, not for any congressional or other down-ballot races.[1]

**DEFENDANT'S UNAUTHORIZED USE OF THE NO LABELS
REGISTERED TRADEMARK AND DEFENDANT'S INTENT TO DECEIVE**

16. Defendant is a newly-created organization[2] that seeks to usurp No Labels' goodwill and tarnish its reputation through its piracy of the No Labels Registered Trademark.

17. Specifically, Defendant registered and utilizes a website (the "Infringing Website") at the domain name <nolabels.com> (the "Infringing Domain"), a domain name identical to the No Labels Domain (<nolabels.org>) save for the top-level domain (.org versus .com).

18. Upon information and belief, Defendant—whose very corporation name contains the Infringing Domain—has hidden behind a proxy entity in registering the Infringing Domain, cloaking its true identity from public view.

---

[1] https://www.nolabels.org/unity-ticket-faqs.
[2] Defendant NoLabels.com Inc. was incorporated in Delaware on November 7, 2023. Further, the website for the Delaware Department of State: Division of Corporations does not publicly reveal the identity of employees, shareholders, officers, or directors of the Defendant. *See, e.g.,* https://icis.corp.delaware.gov/ecorp/entitysearch/NameSearch.aspx.

19. It is not surprising that Defendant seeks to conceal its identity given that the Infringing Website is intentionally designed to mimic the look and layout of the No Labels Website, including the use of a black banner with "NO LABELS" in thick white block text at the top, an oval shaped button at the top right where users may donate or sign up for mailing list, and a similar color scheme of black, white, and yellow, as seen in the images below.

**Infringing Website:**



**No Labels Website:**



20.     Even beyond the visual similarities, the Infringing Website explicitly states that it "is a hub for No Labels Party supporters to foster discussions and solutions," thereby directly and misleadingly linking the Infringing Website with No Labels.

21.     Defendant imitates the No Labels Websites by repeating other key phrases too, such as the phrase "commonsense majority."

**Infringing Website:**



**No Labels Website:**



22. Furthermore, the Infringing Website makes deceptive use of photographs of candidates who appeared at the No Labels Problem Solver Convention, held in 2015, including under the heading "NoLabels.com Leaders," to suggest (falsely) that No Labels endorses or supports those candidates, as seen in the examples below. As the host and organizer of the 2015 Problem Solver Convention, No Labels invited candidates from across the political spectrum and a candidate's attendance at the Convention does not imply or suggest No Labels' endorsement of such candidate.

7

**Infringing Website:**





23.     To be clear, No Labels does not object to third parties referencing No Labels when commenting on No Labels' positions or candidates.  Nor does No Labels seek to stifle free political discussion or competing points of view.  Indeed, No Labels' own website encourages "robust debate on the many issues confronting our country" and the organization "understand[s] that politics is often rough and tumble."[3]

---

[3] https://www.nolabels.org/unity-ticket-faqs.

24. What Defendant cannot do, however, is use the No Labels Registered Trademark, and language and imagery evocative of the legitimate No Labels Website, to attract Internet traffic to an Infringing Website that is designed to mislead and confuse the public, including voters and donors, in order to harm No Labels.

25. Indeed, the content of the Infringing Website cannot reasonably be characterized as fair use or critique of No Labels.  Rather, the Infringing Website hijacks the No Labels Registered Trademark and No Labels' identity, thereby denying No Labels the exclusive ability to control and define its own brand—the fundamental purpose of trademark law.

26. Although No Labels' objection to Defendant's Infringing Website is not based on the specific candidates currently displayed on the Infringing Website—indeed, No Labels would object to candidates from either end of the political spectrum being falsely associated with No Labels – the Infringing Website includes candidates that No Labels is *explicitly not supporting*.

27. Specifically, the Infringing Website prominently features a large photograph of former President Donald Trump on its landing page.  The Infringing Website also includes a photograph of Tyson Draper, with a caption falsely describing Mr. Draper as a "No Labels U.S. Senate Candidate."

**Infringing Website:**





28.     These photographs and captions are deceptive and false.  They run directly contrary to No Labels' position, which makes clear that it only intends to offer its ballot line to presidential and vice-presidential candidates, *not* Congressional candidates.  Furthermore, No Labels' website

10

unequivocally states that it is not supporting Mr. Trump, including by means of an article entitled, "Donald Trump Should Never Again Be President."[4]

29. Equally problematic is the Infringing Website's inclusion of various principles under the heading, "What We Stand For," which do not align with the principles and guiding beliefs of No Labels. Indeed, it is clear that Defendant, through the Infringing Website, is attempting to rebrand No Labels and confuse the public about what the organization actually stands for.

30. The inclusion of these photographs and text thus appears to have two potential purposes: (1) Defendant intends to improperly benefit from No Labels' goodwill and reputation to further Defendant's own cause, as displayed on the Infringing Website; and/or, more sinisterly, (2) Defendant intends to tarnish No Labels' centrist and non-partisan reputation by falsely associating No Labels with the candidates and positions on the Infringing Website in the hopes of undercutting an organization that may decide to support a third-party ticket for the upcoming 2024 presidential election.

31. Regardless of Defendant's intent, both purposes are unlawful and these fraudulent activities may deter those individuals and organizations who would likely support No Labels away from volunteering or contributing financial support to No Label's cause. Defendant's continued control and use of the Infringing Website therefore must not be permitted.

32. Furthermore, Defendant funded a Google Ads campaign, evidenced below, to improve the search result ranking of the Infringing Domain, encouraging viewers to "Join NoLabels.com Today."

---

[4] https://www.nolabels.org/no-labels-donald-trump-president

11



33. Defendant directed these ads to Internet users in California, the District of Columbia, Georgia, Maryland, Missouri, North Carolina, Texas and Washington. The ads, which in and of themselves constitute trademark infringement, are clearly designed to misdirect individuals seeking information about No Labels to the Infringing Website and its misleading content.

### DEFENDANT HAS REFUSED TO ENGAGE WITH PLAINTIFF CONCERNING INFRINGING WEBSITE DESPITE ACTUAL CONFUSION

34. No Labels discovered the Infringing Website after one of its potential supporters was deceived by the Infringing Website. In response, No Labels investigated the site and attempted to contact both the registrar (GoDaddy LLC) as well as the listed registrant (Domains by Proxy LLC) to resolve this dispute without the need for litigation. Counsel for No Labels also sent a request to the registrant seeking further contact information so as to allow the parties to discuss the issue. Finally, counsel sent a request to the registered agent for Defendant, The Corporation Trust Company. There have been no responses to any of these requests.

35. Despite letters, emails, and phone calls to these entities, no one responded to No Labels' outreach, which is consistent with Defendant's attempt to deceive as to its own identity while misappropriating No Labels' identity.

36. No Labels' concern that individuals will be confused or deceived by the Infringing Website is not merely hypothetical. As indicated, one individual, a Texas resident located where Defendant had purchased Google ads supporting the Infringing Website, has *already* contacted No Labels because she was misled by the Defendant and its Infringing Website, causing harm not only to her but also to No Labels, whose goodwill and reputation were harmed by this individual's experience.

37. Defendant's unlawful, deceptive, and undemocratic actions have left No Labels no option other than to seek relief from this Court. No Labels sees no other way to prevent further public and voter confusion and to prevent further irreparable damage to its brand.

### **COUNT I – CYBERSQUATTING**
*Violation of 15 U.S.C. 1125(d)*

38. No Labels realleges and incorporates by reference all preceding allegations set forth above as though fully set forth herein.

39. No Labels' NO LABELS mark is distinctive and has been registered with the United States Patent and Trademark Office since 2010, and thus is presumptively valid and protectable under the Lanham Act.

40. Defendant, without authorization and with a bad faith intent to profit from the No Labels Registered Trademark, registered, traffics in, and uses the <nolabels.com> domain name for its Infringing Website, which domain is identical to the No Labels Registered Trademark and the No Labels Domain.

41. Defendant's bad faith intent is evident in Defendant's use of similar colors, fonts, and visual layout on the Infringing Website intentionally designed to mimic the No Labels Website, which evinces Defendant's intent to divert consumers from the No Labels Website to the Infringing Website.

42. Whether this diversion was intended to benefit Defendant commercially or to harm No Labels' goodwill and tarnish its mark, or both, Defendant's actions demonstrate bad faith in creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the Infringing Website and the candidates, positions, and principles included therein.

43. Defendant's bad faith is further evident in its failure to provide usable and accurate contact information associated with the Infringing Domain and Infringing Website.

44. Defendant has no legitimate rights in NO LABELS and, indeed, only began using the mark in the last several months.

45. Furthermore, Defendant had no reasonable basis to believe that its infringing use of NO LABELS was fair use or otherwise lawful.

46. Defendant's registration and continued use of the Infringing Website was intended to cause harm and has actually caused harm to No Labels, whose supporters have been and will continue to be confused by the Infringing Website.

47. Defendant's registration of the Infringing Domain and continued use of the Infringing Website wrests control of the NO LABELS mark and associated brand from No Labels, the rightful owner of the No Labels Registered Trademark, in violation of No Labels' exclusive rights under federal trademark law.

48. Unless and until Defendant is enjoined from holding the registration for or using the Infringing Domain, No Labels will continue to be irreparably harmed.

## COUNT II – TRADEMARK INFRINGEMENT/ FALSE DESIGNATION OF ORIGIN
*Violation of 15 U.S.C. §1125(a)*

49. No Labels realleges and incorporates by reference all preceding allegations set forth above as though fully set forth herein.

50. No Labels' Registered Trademark is entitled to protection under Section 43(a) of the Lanham Act.

51. Despite knowing of the No Labels Registered Trademark, Defendant intentionally used the NO LABELS mark not only in Defendant's domain name, but dozens of times on the Infringing Website itself. *See, e.g.,* images at ¶¶ 19, 22.

52. Defendant, which improperly uses the No Labels Registered Trademark in its very corporate entity name, also refers to the "No Labels Party"[5] and "NoLabels.com community" throughout the Infringing Website.

53. Furthermore, Defendant funded a Google Ads campaign to improve the search result ranking of the Infringing Domain and attract more individuals to the Infringing Website's misleading information.

54. Defendant has knowingly and intentionally used the No Labels Registered Trademark in a manner that is deceptive and likely to cause confusion—and indeed *already has* caused confusion—as to the affiliation, sponsorship, connection, or association between the Infringing Website, its supporters, and candidates and No Labels.

55. Defendant's use on the Infringing Website of similar color schemes, visual layout, and phrasing ("commonsense," "problem solver," etc.) further demonstrates its intent to cause confusion or deceive consumers concerning an affiliation or sponsorship between No Labels and the ideas, platforms, and candidates contained on Defendant's Infringing Website.

---

[5] As noted in Paragraph 6 of this Complaint, No Labels is a 501(c)(4) non-profit organization. Although certain state chapters of No Labels have registered as political parties within their respective state, No Labels is not nationally organized as a political party. The Infringing Website's reference to the "No Labels Party" therefore is a mischaracterization of the organization.

15

56. No Labels is aware of at least one individual who was confused or deceived by Defendant's infringement, and both No Labels and this individual suffered harm as a result of that confusion and/or deception. It is certain that additional individuals will similarly be misled and confused by Defendant's attempts to falsely suggest sponsorship or affiliation between No Labels and the ideas, platforms, and candidates on the Infringing Website.

57. Defendant's continued infringement of the No Labels Registered Trademark—in the Infringing Domain, on the Infringing Website, and as part of the Google Ads campaign—will cause No Labels irreparable injury, which cannot be adequately compensated by money damages.

58. No Labels therefore requests that the Court enjoin Defendant from any further use of the No Labels Registered Trademark, whether in the Infringing Domain, on the Infringing Website, as part of the Google advertisements, in its corporate entity name, or otherwise.

## COUNT III – TRADEMARK INFRINGEMENT
*Violation of 15 U.S.C. § 1114(1)*

59. No Labels realleges and incorporates by reference all preceding allegations set forth above as though fully set forth herein.

60. No Labels' Registered Trademark is entitled to protection.

61. Defendant intentionally and without No Labels' consent used a reproduction, counterfeit, copy or colorable imitation of the NO LABELS mark not only in Defendant's domain name, but dozens of times on the Infringing Website itself. *See, e.g.*, images at ¶¶ 19, 22.

62. Defendant, which improperly uses the No Labels Registered Trademark in its very corporate entity name, also refers to the "No Labels Party"[6] and "NoLabels.com community" throughout the Infringing Website.

---

[6] *See* fn. 5 *supra*.

63. Furthermore, Defendant funded a Google Ads campaign to improve the search result ranking of the Infringing Domain and attract more individuals to the Infringing Website's misleading information.

64. Defendant has knowingly and intentionally used the No Labels Registered Trademark in connection with its services in a manner that is deceptive and likely to cause confusion – and indeed *already has* caused confusion.

65. Defendant's use on the Infringing Website of similar color schemes, visual layout, and phrasing ("commonsense," "problem solver," etc.) further demonstrates its intent to cause confusion or deceive consumers concerning an affiliation or sponsorship between No Labels and the ideas, platforms, and candidates contained on Defendant's Infringing Website.

66. No Labels is aware of at least one individual who was confused or deceived by Defendant's infringement, and both No Labels and this individual suffered harm as a result of that confusion and/or deception. It is certain that additional individuals will similarly be misled and confused by Defendant's attempts to falsely suggest sponsorship or affiliation between No Labels and the ideas, platforms, and candidates on the Infringing Website.

67. Defendant's continued infringement of the No Labels Registered Trademark – in the Infringing Domain, on the Infringing Website, and as part of the Google Ads campaign – will cause No Labels irreparable injury, which cannot be adequately compensated by money damages.

68. No Labels therefore requests that the Court enjoin Defendant from any further use of the No Labels Registered Trademark, whether in the Infringing Domain, on the Infringing Website, as part of the Google advertisements, in its corporate entity name, or otherwise.

**PRAYER FOR RELIEF**

WHEREFORE, No Labels respectfully requests that the Court enter judgment in its favor and against Defendant, providing the following relief:

- Entering judgment in favor of No Labels on its ACPA claim;

- Entering judgment in favor of No Labels on its Lanham Act claims for trademark infringement and false designation of origin;

- Ordering the transfer of <nolabels.com> to the Plaintiff, pursuant to 15 U.S.C. § 1125(d)(1)(C);

- Enjoining Defendant's use of the No Labels Registered Trademark in any manner, including but not limited to on the Infringing Domain, the Infringing Website, and in its corporate entity name, pursuant to 15 U.S.C. § 1116(a);

- Awarding No Labels a monetary judgment for Defendant's profits, No Labels' damages, and the costs of this action, pursuant to 15 U.S.C. § 1117(a);

- Trebling No Labels' damages based on the circumstances of the case, including Defendant's willful and knowing infringement and intent to deceive, pursuant to 15 U.S.C. § 1117(a);

- Awarding No Labels statutory damages of no less than $100,000 for Defendant's violation of 15 U.S.C. § 1125(d)(1);

- Finding this action to be exceptional and thus awarding No Labels its reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117(a);

- Granting leave for No Labels to conduct expedited discovery, as appropriate; and

- Awarding No Labels such other and further relief as the Court deems just and appropriate.

| | |
|---|---|
| Date: December 4, 2023 | **HALLORAN FARKAS + KITTILA LLP** |
| | |
| | /s/ Theodore A. Kittila |
| *Of Counsel:* | Theodore A. Kittila (Bar No. 3963) |
| | 5801 Kennett Pike, Suite C/D |
| Mark D. Lytle (*pro hac vice* forthcoming) | Wilmington, Delaware 19807 |
| **NIXON PEABODY LLP** | Phone:  (302) 257-2025 |
| 799 9th Street NW | Fax:  (302) 257-2019 |
| Suite 500 | Email:  tk@hfk.law |
| Washington, DC 20001 | |
| Tel:  (202) 585-8435 | *Counsel for Plaintiff* |
| Fax:  (907) 331-4726 | |
| Email:  mlytle@nixonpeabody.com | |

Jason C. Kravitz (*pro hac vice* forthcoming)
Leslie E. Hartford (*pro hac vice* forthcoming)
Exchange Place
53 State Street
Boston, Massachusetts 02109
Tel:  (617) 345-1318
Fax:  (617) 345-1300
Email:  jkravitz@nixonpeabody.com
         lhartford@nixonpeabody.com