UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

NO LABELS,

     Plaintiff,

*v.*

NOLABELS.COM INC.,

     Defendant.

Case No. Case 1:23-cv-01384-GBW

## <u>DECLARATION OF NICHOLAS CONNORS</u>

I, Nicholas Connors, do hereby declare and state the following based on first-hand knowledge:

1.     I am the Director of Ballot Access at No Labels.

2.     I submit this declaration in further support of Plaintiff's Motion for Temporary Restraining Order and/or Motion for Preliminary Injunction based on my information, knowledge and belief and the records in this matter.

3.     If called as a witness, I could and would testify competently to the information detailed in this declaration.

4.     No Labels was granted registration for its NO LABELS trademark, No. 3,946,066, on April 12, 2011, for use with "issue advocacy; public advocacy to promote awareness of public policy options and political issues" in Class 35 (the "No Labels Registered Trademark").

5.     There are several state-level organizations with which No Labels is affiliated, including, but not limited to, in Alaska, Arizona, Arkansas, Colorado, Florida, Hawaii, Kansas, Mississippi, Nevada, North Carolina, Oregon, South Dakota, and Utah (the "No Labels State-Affiliated Entities").

4892-6434-4215.2

6.      No Labels authorizes the No Labels State-Affiliated Entities, some of which are organized and registered as political parties per the relevant state regulations, to use the No Labels Registered Trademark as part of their operation.

7.      Most of the No Labels State-Affiliated Entities have bylaws that govern their operation.

8.      By way of example, the Constitution and Bylaws of the No Labels Party of Florida ("NLF") acknowledge that NLF is authorized by No Labels to perform certain public-facing activities consistent with the mission of No Labels.  This document can be viewed publicly by way of the Florida Department of State – Division of Elections. https://dos.elections.myflorida.com/campaign-docs/?account=83601 and is attached hereto as Attachment "A".

9.      Section 2 of the NLF Bylaws is entitled "Purpose and Authorized Activities[.]" Under the heading "Authorized Activities[,]" the NLF Bylaws provide that it is "authorized by No Labels" to conduct a specified list of activities in Florida, which include, among other things: (a) obtaining ballot access for candidates nominated by No Labels for the federal offices of President and Vice President; (b) conducting campaigns for candidates nominated by No Labels for those federal offices: (c) maintaining a public and functioning website to publish meeting notices and other information; (d) raising and expending funds, as necessary, to carry out authorized activities; and (e) performing other tasks necessary or legally required to carry out authorized activities.

10.      The NLF Bylaws also list activities that are "not authorized" including that NLF is "not authorized to nominate, support, or oppose any candidate for a state, county, municipal, school, or district office position."

11. No Labels Nevada ("NLNV") is another No Labels State-Affiliated Entity that has issued a Constitution and Bylaws. The document is publicly available on the official website for the Nevada Secretary of State.

https://www.nvsos.gov/sos/home/showpublisheddocument/12295/638270935789070000 and is attached hereto as Attachment "B".

12. The NLNV Bylaws contain a list of activities that are authorized by No Labels. This list is almost identical to the activities authorized by No Labels to the No Labels State-Affiliated Entity in Florida. *See* Paragraphs 8 through 10 above.

13. Although the bylaws vary slightly by state due to state laws, these are typical of the bylaws associated with other No Labels State Entities.

14. If one of the No Labels State Entities refused to comply with these bylaws and engaged in conduct that No Labels deemed to exceed these authorized activities or deemed to be inappropriate, No Labels would revoke that No Labels State Entity's right to use the No Labels Registered Trademark.

15. On November 9, 2023, counsel for No Labels Party of Alaska wrote to the Director of the Alaska Division of Elections concerning a candidate's unauthorized association with the No Labels Party of Alaska.

16. A true and accurate copy of the letter is attached hereto as Attachment "C".

17. On October 19, 2023, counsel for No Labels Party of Arizona initiated litigation in the United States District Court for the District of Arizona concerning certain candidates' unauthorized association with the No Labels Party of Arizona and the Secretary of State of Arizona's actions concerning the candidates' registration. The case is captioned as "*The No*

*Labels Party of Arizona, an Arizona Political Party v. Adrian Fontes, in his official capacity as the Secretary of State of Arizona, Case No. 2:23-cv-02172-JJT (Dist. Ariz.)*."

18.     A true and accurate copy of the complaint is attached hereto as Attachment "D".

19.     I declare under penalty of perjury as provided by law that the statements contained in this declaration are true and correct to the best of my knowledge and belief.

EXECUTED this 14th day of December, 2023.

*Nicholas Connors*
_____
Nicholas Connors

4

4892-6434-4215.2

# ATTACHMENT A

October 27, 2022

RECEIVED
DEPARTMENT OF STATE

2022 OCT 31   AM 10: 23

DIVISION OF ELECTIONS
TALLAHASSEE. FL

<u>Via Federal Express</u>
Department of State
Division of Elections
R.A. Gray Building, Suite 316
500 South Bronough Street
Tallahassee, FL 32399

**ATTN**: Donna S. Brown

**RE**: No Labels Party of Florida, Minor Political Party Filing Certificate

Dear Ms. Brown: Pursuant to Section 103.095(1), Florida Statues, I certify the following information for purposes of obtaining minor political party recognition for No Labels Party of Florida:

1) **Party Name:** The name of the minor party is No Labels Party of Florida.

2) **Party Officers:** The current officers of No Labels Party of Florida are:

   ➢ Kathleen Shanahan, Chairwoman
     2413 Bayshore Blvd, Apt. 1405
     Tampa, FL 33629

   ➢ Harold Mills, Vice-Chair
     11900 Lake Butler Blvd
     Windermere, FL 34786

   ➢ Allan Keen, Treasurer and Secretary
     140 E. Morse Boulevard, Unit K
     Winter Park, FL 32789

3) **State Executive Committee:** The current members of the State Executive Committee of No Labels Party of Florida are:

   ➢ Kathleen Shanahan, Chairwoman
     2413 Bayshore Blvd, Apt. 1405
     Tampa, FL 33629

   ➢ Harold Mills, Vice-Chair
     11900 Lake Butler Blvd
     Windermere, FL 34786

   ➢ Allan Keen, Treasurer and Secretary
     140 E. Morse Boulevard, Unit K
     Winter Park, FL 32789

1

➤  Mariso de Colsa
7900 Harbor Island Drive, Apt. 1402
North Bay Village, FL 33141

➤  Randall Smith
1205 Palm Trail
Delray Beach, FL 33483

We previously enclosed completed voter registration applications for each current officer and executive committee member of No Labels Party of Florida, which we were instructed by the Department of State's counsel not to resubmit.

Additionally, enclosed is an updated copy of the Constitution and Bylaws of No Labels Party of Florida that we have revised in accordance with the Department of State's feedback. For the convenience of your office, below is a chart that lists the statutory requirements for the "constitution, bylaws, and rules and regulations" that govern the party, together with the corresponding reference that satisfies the requirement:

| Florida State Legal Requirement | Relevant Bylaws Section |
|---|---|
| "Each elector registered to vote in the minor political party in which he or she has so designated has a fundamental right to fully and meaningfully participate in the business and affairs of the minor political party without any monetary encumbrance." | Section 3(b) |
| "…prescribe its membership…" | Section 3(a) |
| "…conduct its meetings according to generally accepted parliamentary practices…" | Sections 4(d), 5(c) |
| "…timely notify its members as to the time, date, and place of all of its meetings…" | Section 5(b) |
| "…timely publish notice on its public and functioning website as to the time, date, and place of all of its meetings…" | Section 4(d), 5(b) |
| "…elect its officers…" | Section 4(b)-(c)(i) |
| "…remove its officers…" | Section 4(b)-(c)(i) |
| "…make party nominations when required by law…" | Sections 2(b), 6 |
| "…conduct campaigns for party nominees…" | Section 2(b), 6 |
| "…raise and expend party funds…" | Sections 2(b), 4(c)(v) |
| "…select delegates to its national convention, if applicable…" | Sections 2(b), 5 |
| "…select presidential electors, if applicable…" | Sections 2(b), 7 |
| "….alter or amend all of its governing documents…" | Section 8 |
| "The members of the executive committee must elect a chair, vice chair, secretary, and treasurer, all of whom shall be members of the minor political party, and no member may hold more than one office, except that one person may hold the offices of secretary and treasurer." | Section 4(c) |

No Labels Party of Florida has and will maintain a fully functioning website at www.NoLabelsFlorida.org.  No Labels Party of Florida requests the three-letter designation of "NLF."

Should you have any questions or concerns, please contact Nick Connors, Director of Ballot Access for No Labels, at (919) 480-1296 or ballotaccess@nolabels.org.

Finally, I respectfully request that a copy of the Department of State's minor party acknowledgment letter for No Labels Party of Florida be sent via email to ballotaccess@nolabels.org.

Thank you for your attention to this matter.

Sincerely,

Allan Keen
Treasurer and Secretary, No Labels Party of Florida

Cc:    Nicholas Connors
       Director of Ballot Access
       No Labels
       ballotaccess@nolabels.org

# NO LABELS PARTY OF FLORIDA
# CONSTITUTION AND BYLAWS

RECEIVED
DEPARTMENT OF STATE

2022 OCT 31 AM 10: 23

DIVISION OF ELECTIONS
TALLAHASSEE, FL

1. **Organization Name and Governance.**

   a. Name. The name of this organization shall be No Labels Party of Florida ("NLF").

   b. Purpose. NLF shall be governed by this document, the Constitution and Bylaws, which shall serve as NLF's constitution, charter, bylaws, rules, and regulations for purposes of Florida state law.

2. **Purpose and Authorized Activities.**

   a. Purpose. NLF is the state-level affiliate organization of No Labels, Inc. ("No Labels") in Florida.

   b. Authorized Activities. NLF is authorized by No Labels to conduct the following activities in Florida: (i) select delegates to participate in the national nominating convention of No Labels; (ii) obtain ballot access for candidates nominated by No Labels for the federal offices of President and Vice President; (iii) designate eligible individuals for Presidential and Vice-Presidential Elector; (iv) conduct campaigns for candidates nominated by No Labels for the federal offices of President and Vice President; (v) maintain a public and functioning website to publish meeting notices and other information; (vi) raise and expend funds, as necessary, to carry out authorized activities; and (vii) perform other tasks necessary or legally required to carry out authorized activities. NLF is not authorized and shall not nominate, support, or oppose any candidate for a state, county, municipal, school, or district office or position.

3. **Membership.**

   a. Eligibility and Qualification. An individual is an NLF Member if they are: (1) a U.S. citizen who resides in Florida; (2) 18 years of age or older; and (3) a recognized and current member in good standing of No Labels.

   b. Rights. All NLF Members who are registered to vote have a fundamental right to fully and meaningfully participate in the business and affairs of NLF without any monetary encumbrance. All provisions of the Constitution and Bylaws shall be construed in a manner to reflect this fundamental right. All NLF Members are entitled to participate in NLF as described in the Constitution and Bylaws.

4. **State Executive Committee.**

   a. Powers and Duties. The State Executive Committee ("Committee") directs and administrates NLF's authorized activities. The Committee also performs other tasks as described in the Constitution and Bylaws.

   b. Composition, Appointment, Qualifications, and Terms of Service. The Committee consists of no more than eight individuals, each of whom must be an NLF Member. The initial members of the Committee shall be appointed by No Labels. Each member of the Committee serves a term that lasts until the Committee member dies, resigns, or is removed by No Labels. If a vacancy occurs on the Committee, the vacancy shall be filled by No Labels. The Committee shall notify the Florida Division of Elections within five days of any Committee member's vacancy and/or replacement.

c. Officers.

    i. The Committee shall elect from among its number a Chair, Vice Chair, Secretary, and Treasurer. No individual may hold more than one office, other than the offices of Secretary and Treasurer. Each officer shall serve a term that lasts until the officer dies, resigns, or is removed from such officer position by the procedure of a vote of three-fourths of the Committee's other members. The Committee shall notify the Florida Division of Elections within five days of any change to NLF's officer positions.

    ii. The Chair shall serve as NLF's chief executive officer, authorize in writing any fundraising or spending by NLF, consider requests to use NLF's name or symbols, and preside over all meetings or gatherings convened to conduct NLF business.

    iii. The Vice Chair shall perform such duties as delegated by the Committee.

    iv. The Secretary shall issue all notices required under the Constitution and Bylaws.

    v. The Treasurer shall authorize in writing the raising of contributions to NLF, ensure the timely deposit of any contributions to NLF into NLF's designated bank depository account, and authorize in writing the expenditure of NLF funds according to a budget set forth by the Committee. The Treasurer shall periodically report to the Committee on NLF's financial activity, including an accounting of all authorized fundraising efforts, deposits, and authorized expenditures. The Treasurer shall have custody of any funds and financial records of NLF, ensure that NLF funds are maintained and disbursed properly in a lawful manner, maintain a sufficient level of financial activity for NLF to continue to qualify for its status under Florida state law, oversee an annual public audit as required by Florida state law, and perform any other duties required by law.

d. Meetings. Meetings of the Committee are held at least once each calendar year. Either the Committee's Chair or a majority of the Committee's members may call for a meeting at any time. Notice of a meeting must be distributed to all members of the Committee prior to the meeting and provide the meeting's purpose, time, place (if any), and method to attend via telephone and/or videoconference. The Committee shall timely publish notice of the time, date, and place of the meeting on NLF's public website (located at www.NoLabelsFlorida.org). The Committee's members may participate in a meeting through use of telephone, videoconference, or similar communications equipment, so long as all members of the Committee participating in the meeting can hear one another. A quorum for the transaction of business at a meeting consists of a majority of the Committee's members. The Committee takes action at a meeting through an affirmative vote of the majority of the Committee's members who are present at a duly held meeting. All meetings of the Committee shall be conducted according to Robert's Rules of Order or other generally accepted parliamentary practices.

e. Action Outside a Meeting. Any action that may be taken during a meeting of the Committee may be taken without such a meeting, if authorized in writing (including via email or other electronic method) by a majority of all members of the Committee.

## 5. Convention of Membership.

a. Purpose. NLF shall hold a Convention of its Members at least once each Presidential election year for the purpose of selecting delegates and alternate delegates to participate in the national nominating convention of No Labels. NLF Members may also raise for discussion at the Convention other matters related to NLF's authorized activities.

b. Timing and Notice. The Committee shall set the time, date, and place of the Convention, timely notify NLF Members of the Convention, and timely publish notice of the Convention on NLF's

public website (located at www.NoLabelsFlorida.org). The Committee may choose to facilitate NLF Members' participation and/or observation of the Convention through use of telephone, videoconference, or similar communications equipment.

c. <u>Convention Procedures.</u> The Chair shall preside at the Convention. The Convention shall be conducted according to Robert's Rules of Order or other generally accepted parliamentary practices. A quorum for the transaction of business at the Convention consists of a majority of NLF's Members. Delegates and alternate delegates to the national nominating convention of No Labels shall be selected by NLF's Members at the Convention according to the procedures set forth by No Labels for delegate and alternate delegate selection.

## 6. Nominees for President and Vice President.

The Presidential and Vice-Presidential nominees of NLF shall be the candidates nominated at the No Labels national nominating convention. The Committee shall timely undertake all necessary and legally required actions for the nominees of No Labels for the federal offices of President and Vice President to appear on the general election ballot in Florida. The Committee shall separately authorize, through the procedure of an affirmative vote of the majority of the Committee, the conduct of campaigns for the Presidential and Vice-Presidential nominees of NLF in the State of Florida.

## 7. Selection of Presidential and Vice-Presidential Electors.

The Committee shall, at a meeting of the Committee and through the procedure of an affirmative vote of the majority of the Committee, designate nominees for Presidential and Vice-Presidential Elector from among the eligible individuals who have applied for the position by signing and submitting to the Committee the No Labels Conditions of Appointment or Nomination. Following the Committee's designation of nominees for Presidential and Vice-Presidential Elector, the Committee shall timely undertake all additional necessary and legally required actions to qualify those nominees with the State of Florida to serve as Presidential and Vice-Presidential Electors. The Committee shall also designate, as necessary, alternates to serve as Electors in the event that an Elector dies, resigns, is legally disqualified or incapacitated, refuses to act, fails to attend the Elector meeting, or fails to abide by the No Labels Conditions of Appointment or Nomination.

## 8. Adoption of Constitution and Bylaws; Amendments to Constitution and Bylaws.

The Constitution and Bylaws may be adopted by a majority of the Committee. The Constitution and Bylaws may be amended or repealed by a majority of the Committee upon the written consent of No Labels. The Committee shall file with the Florida Division of Elections any change to the Constitution and Bylaws within five days after such change.

# ATTACHMENT B

# NO LABELS NEVADA
FILED.NV.SOS
2022 DEC 8 PM 12:09
# CONSTITUTION AND BYLAWS

1. **Organization Name and Governance.**

   a. <u>Name</u>. The name of this organization shall be No Labels Nevada ("NLNV").

   b. <u>Purpose</u>. NLNV shall be governed by this document, the Constitution and Bylaws, which shall serve as NLNV's constitution, charter, bylaws, rules, and regulations for purposes of Nevada state law.

2. **Purpose and Authorized Activities.**

   a. <u>Purpose</u>. NLNV is the state-level affiliate organization of No Labels, Inc. ("No Labels") in Nevada.

   b. <u>Authorized Activities</u>. NLNV is authorized by No Labels to conduct the following activities in Nevada: (i) select delegates to participate in the national nominating convention of No Labels; (ii) obtain ballot access for candidates nominated by No Labels for the federal offices of President and Vice President; (iii) designate eligible individuals for Presidential and Vice-Presidential Elector; (iv) conduct campaigns for candidates nominated by No Labels for the federal offices of President and Vice President; (v) raise and expend funds, as necessary, to carry out authorized activities; and (vii) perform other tasks necessary or legally required to carry out authorized activities. NLNV is not authorized and shall not nominate, support, or oppose any candidate for a state, county, municipal, school, or district office or position.

3. **Membership.**

   a. <u>Eligibility and Qualification</u>. An individual is an NLNV Member if they are: (1) a U.S. citizen who resides in Nevada; (2) 18 years of age or older; and (3) a recognized and current member in good standing of No Labels.

   b. <u>Rights</u>. All NLNV Members are entitled to participate in NLNV as described in the Constitution and Bylaws.

4. **State Executive Committee.**

   a. <u>Powers and Duties</u>. The State Executive Committee ("Committee") directs and administrates NLNV authorized activities. The Committee also performs other tasks as described in the Constitution and Bylaws.

   b. <u>Composition, Appointment, Qualifications, and Terms of Service</u>. The Committee consists of no fewer than two individuals, each of whom must be an NLNV Member. The initial members of the Committee shall be appointed by No Labels. Each member of the Committee serves a term that lasts until the Committee member dies, resigns, or is removed by No Labels. If a vacancy occurs on the Committee, the vacancy shall be filled by No Labels. The Committee shall file an amended certificate of existence with the Nevada Secretary of State within five days of any Committee member's vacancy and/or replacement.

   c. <u>Officers</u>.
      i. The Committee shall elect from among its number a Chair, Secretary, and Treasurer. No individual may hold more than one office, other than the offices of Secretary and Treasurer.

Each officer shall serve a term that lasts until the officer dies, resigns, or is removed from such officer position by the procedure of a vote of no less than two-thirds of the Committee's other members. The Committee shall notify the Nevada Secretary of State within five days of any change to NLNV officer positions.

ii.     The Chair shall serve as NLNV's chief executive officer, authorize in writing any fundraising or spending by NLNV, consider requests to use NLNV's name or symbols, preside over all meetings or gatherings convened to conduct NLNV business, and communicate or select a designee to communicate on behalf of NLNV.

iii.    The Secretary shall issue all notices required under the Constitution and Bylaws.

iv.     The Treasurer shall authorize in writing the raising of contributions to NLNV, ensure the timely deposit of any contributions to NLNV into NLNV's designated bank depository account, and authorize in writing the expenditure of NLNV funds according to a budget set forth by the Committee. The Treasurer shall periodically report to the Committee on NLNV's financial activity, including an accounting of all authorized fundraising efforts, deposits, and authorized expenditures. The Treasurer shall have custody of any funds and financial records of NLNV, ensure NLNV funds are maintained and disbursed properly in a lawful manner and perform any other duties required by Nevada law.

d.  Meetings. Meetings of the Committee are held at least once each calendar year to elect party officers and for the transaction of other party business. Either the Committee's Chair or a majority of the Committee's members may call for a meeting at any other time. Notice of a meeting must be distributed to all members of the Committee prior to the meeting and provide the meeting's purpose, time, place (if any), and method to attend via telephone and/or videoconference. The Committee's members may participate in a meeting through use of telephone, videoconference, or similar communications equipment, so long as all members of the Committee participating in the meeting can hear one another. A quorum for the transaction of business at a meeting consists of a majority of the Committee's members. The Committee takes action at a meeting through an affirmative vote of the majority of the Committee's members who are present at a duly held meeting. All meetings of the Committee shall be conducted according to Robert's Rules of Order or other generally accepted parliamentary practices.

e.  Action Outside a Meeting. Any action that may be taken during a meeting of the Committee may be taken without such a meeting, if authorized in writing (including via email or other electronic method) by a majority of all members of the Committee.

## 5.  Convention of Membership.

a.  Purpose. NLNV may hold a Convention of its Members during each Presidential election year for the purpose of selecting delegates and alternate delegates to participate in the national nominating convention of No Labels. NLNV Members may also raise for discussion at the Convention other matters related to NLNV's authorized activities.

b.  Timing and Notice. The Committee shall set the time, date, and place of the Convention, timely notify NLNV Members of the Convention, and timely publish public notice of the Convention. The Committee may choose to facilitate NLNV Members' participation and/or observation of the Convention through use of telephone, videoconference, or similar communications equipment.

c.  Convention Procedures. The Chair shall preside at the Convention. The Convention shall be conducted according to Robert's Rules of Order or other generally accepted parliamentary practices. A quorum for the transaction of business at the Convention consists of a majority of NLNV's Members. Delegates and alternate delegates to the national nominating convention of No Labels

may be selected by NLNV's Members at the Convention according to the procedures set forth by No Labels for delegate and alternate delegate selection.

6. **Nominees for President and Vice President.**

The Presidential and Vice-Presidential nominees of NLNV shall be the candidates nominated at the No Labels national nominating convention. The Committee shall ensure that only one candidate may be nominated for each office. The Committee shall timely undertake all necessary and legally required actions for the nominees of No Labels for the federal offices of President and Vice President to appear on the general election ballot in Nevada.

7. **Selection of Presidential and Vice-Presidential Electors.**

The Committee shall timely undertake all necessary and legally required actions to select, designate, and qualify eligible individuals to serve as Presidential and Vice-Presidential Electors. Presidential and Vice-Presidential Electors must sign the No Labels Conditions of Appointment or Nomination prior to formal selection, designation, or qualification. The Committee shall also designate, as necessary, alternates to serve as Electors in the event that an Elector dies, resigns, is legally disqualified or incapacitated, refuses to act, fails to attend the Elector meeting, or fails to abide by the No Labels Conditions of Appointment or Nomination.

8. **Adoption of Bylaws; Amendments to Bylaws.**

These Bylaws may be adopted by a majority of the Committee. These Bylaws may be amended or repealed by a majority of the Committee upon the written consent of No Labels. The Committee shall file an amended certificate of existence with the Nevada Secretary of State reflecting any amendments to these Bylaws no later than five days after such amendments are adopted.

# ATTACHMENT C



HARRIS

ST. LAURENT

WECHSLER

November 9, 2023

<u>**Via Email**</u>

Carol Beecher
Director
Alaska Division of Elections
PO Box 110017
Juneau, AK 99811-0017
Carol.beecher@alaska.gov

Re: **No Labels Party of Alaska**

Ms. Beecher:

On September 29, 2023, counsel for No Labels Party of Alaska notified you that Richard Grayson, who had recently filed a Declaration of Candidacy for U.S. House of Representatives, is erroneously listed on your website as affiliated with the "No Labels Party," despite the fact that the No Labels Party of Alaska is a "limited political party." As a limited political party, No Labels Party of Alaska is not participating in elections for any office other than President and Vice President of the United States. A candidate running for the U.S. House of Representatives can choose to be listed as affiliated with either a "political party" or a "political group," but not with a "limited political party." If the Division of Elections persists in inaccurately representing on its website that Mr. Grayson's U.S. House of Representatives candidacy is affiliated with the No Labels Party of Alaska, the No Labels Party of Alaska reserves all options to enforce its rights. Indeed, the No Labels Party of Arizona recently filed suit against the Arizona Secretary of State after he allowed candidates, including Mr. Grayson, to declare candidacies purportedly affiliated with No Labels for offices other than President and Vice President of the United States.[1]

The No Labels Party of Alaska has chosen to organize itself as a "limited political party" under Ak. Stat. §§ 15.80.010(16) and is qualified only to nominate candidates for Presidential and Vice-Presidential electors. The No Labels Party of Alaska is not qualified as a "political party" in Alaska because it has not registered the requisite 5,000 Alaska voters to qualify for that status. *See* Ak. Stat. §§ 15.80.010(27), 15.80.008. It is also not a "political group" because it is not seeking status as a recognized political party. *See* Ak. Stat. § 15.80.008; 6 Ak. Admin. Code § 25.140. Limited political parties, like the No Labels Party of Alaska, do not participate in elections for

---

[1] For your reference, a copy of that complaint is enclosed.

BARRY J. POLLACK | HS-LAW.COM | BPOLLACK@HS-LAW.COM | DIRECT (202) 617-5971

MAIN (212) 397-3370 | FAX (212) 202-6206 | 1775 PENNSYLVANIA AVE, NW, SUITE 650, WASHINGTON, D.C. 20006

Error! Unknown document property name.

other offices in the state. Not surprisingly, then, candidates for other offices may not list themselves as being affiliated with a limited political party for purposes of that race.

On October 2, 2023, the Alaska Division of Elections responded to the No Labels Party of Alaska by noting that Mr. Grayson indicated that he was registered with the No Labels Party of Arizona and on that basis could list his candidacy for U.S. House of Representatives as being affiliated with No Labels. Mr. Grayson, however, must be "registered as affiliated" with a "political party" or "political group" organized under Alaska law. The No Labels Party of Arizona has no status whatsoever under Alaska law and, in any event, the No Labels Party of Arizona, under its bylaws and Constitution was formed for the limited specific purpose of placing yet-to-be-identified nominees for President and Vice President on the 2024 general-election ballot. Accordingly, to the extent that the No Labels Party of Arizona had any status under Alaska law, it would be, just as the No Labels Party of Alaska is, a "limited political party," not a "political party" or "political group." No candidate under Alaska law can, as a candidate for the U.S. House of Representatives, affiliate himself with No Labels of Arizona, just as he could not affiliate himself with the No Labels Party of Alaska. Neither is a "political party" or "political group" under Alaska law.

The No Labels Party of Alaska chose to become a limited political party under Alaska law specifically because it does not wish to be associated with candidates for any office other than president or vice president. It does not intend or desire to have any candidate for any congressional, state, judicial, or local office purport to be affiliated with it for purposes of that candidacy. Permitting Mr. Grayson to list himself as affiliated with the No Labels Party of Alaska for purposes of his candidacy for U.S. House of Representatives, despite the status of No Labels Party of Alaska as a limited political party, not only violates Alaska law, it also is inconsistent with No Labels Party of Alaska's associational goals and violates its constitutional rights.[2]

Please let us know if the Alaska Division of Elections agrees it will cease permitting Mr. Grayson on its website or primary ballot to state to indicate that he is affiliated with the No Labels Party for purposes of his candidacy for the U.S. House of Representatives. If, on the other hand, the Alaska Division of Elections is inclined to continue to permit Mr. Grayson on its website or primary ballot to state that he is affiliated with the No Labels Party for purposes of his candidacy for the U.S. House of Representatives, in violation of Alaska law and the First and Fourteenth

---

[2] Permitting Mr. Grayson to list himself as a No Labels Party candidate for the U.S. House of Representatives violates No Labels Party of Alaska's First and Fourteenth Amendment rights of association. "[A] corollary of the [First Amendment] right to associate is the right to not associate." *Cal. Democratic Party v. Jones*, 530 U.S. 567, 574 (2000). "This First Amendment freedom to gather in association for the purpose of advancing shared beliefs is protected by the Fourteenth Amendment from infringement by any State." *Democratic Party of U. S. v. Wisconsin ex rel. La Follette*, 450 U.S. 107, 121 (1981). The law is clear that a state may not substitute its own judgment for that of an organization in determining "the structure which best allows it to pursue its political goals." *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 224 (1986).

Page 3 of 3
November 9, 2023

Amendment rights of the No Labels Party of Alaska,  No Labels Party of Alaska reserves its rights to take further action to obtain appropriate relief.

Thank you for your prompt attention to this matter.  Please respond to this letter no later than November 3, 2023.  If you have any questions, please do not hesitate to contact me.

Sincerely,

*Barry J. Pollack*

Barry J. Pollack
Counsel for the No Labels Party of Alaska

# ATTACHMENT D

David B. Rosenbaum, No. 009819
Andrew G. Pappas, No. 034432
Emma J. Cone-Roddy, No. 034285
Brandon T. Delgado, No. 035924
OSBORN MALEDON, P.A.
2929 North Central Avenue, 20th Floor
Phoenix, Arizona 85012-2793
(602) 640-9000
drosenbaum@omlaw.com
apappas@omlaw.com
econe-roddy@omlaw.com
bdelgado@omlaw.com

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| The No Labels Party of Arizona, an Arizona political party, | No. |
|---|---|
| Plaintiff, | **COMPLAINT** |
| vs. | |
| Adrian Fontes, in his official capacity as the Secretary of State of Arizona, | |
| Defendant. | |

Plaintiff The No Labels Party of Arizona ("Plaintiff" or "No Labels Arizona") brings this Complaint against Defendant Adrian Fontes, in his official capacity as the Secretary of State of Arizona ("Defendant" or the "Secretary"). For its Complaint against the Secretary Fontes, No Labels Arizona alleges as follows:

## INTRODUCTION

1.     Arizona's election laws confer discretion on a political party whether to participate in a particular election by nominating candidates for the ballot in that race. Specifically, A.R.S. § 16-301(A) provides that each political party "*intending* to make nominations for the ensuing general" election, "*if it desires* to have the names of its candidates printed on the official ballot at that general," shall nominate the candidate at a

primary election. (emphasis added.)  A political party that decides against nominating a candidate through a primary election must live with the consequence that "no candidate for that office for that party may appear on the general or special election ballot" under A.R.S. § 16-302.  Arizona law by its express terms, therefore, does not mandate a party's participation in the primary.  The language twice makes clear that not every party entitled to nominate a candidate in a primary election must do so: a party must also "intend[] to make nominations for that public office and "desire[]" to have the name of the party's nominee for that office printed on the general-election ballot.  A.R.S. § 16-301.  State law circumscribes a political party's right to choose the selection process by requiring a primary election only if the party desires to have the names of its candidates printed on the ensuing general election ballot.

2.      The First and Fourteenth Amendments to the U.S. Constitution likewise endow political parties with broad rights to freedom of association.  A political party's "determination of the boundaries of its own association, and of the structure which best allows it to pursue its political goals, is protected by the Constitution."  *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 224 (1986) (holding a state may not substitute its own judgment for that of the party in determining "the structure which best allows it to pursue its political goals").  A political party also has the right to "limit its membership as it wishes, and to choose a candidate-selection process that will in its view produce the nominee who best represents its political platform."  *N.Y. State Bd. of Elections v. Lopez Torres*, 552 U.S. 196, 202 (2008).  These rights can be "circumscribed" only if the organization chooses to avail itself of "the right to have their candidates appear with party endorsement on the general-election ballot."  *Id.* at 203.

3.      No Labels Arizona does not intend or desire to associate with or nominate any candidate for U.S. Senator or Corporation Commissioner, or for any congressional, state, judicial, county, or precinct office.  And it does not want to have its candidates listed on the general election ballot for those offices.  Indeed, No Labels Arizona has repeatedly communicated to the Secretary that it will nominate candidates only for the offices of

President and Vice President.  No Labels Arizona also adopted Constitution and Bylaws that limit its focus to these offices.  This is intentional.  With finite time and resources to bring to bear before the 2024 general election, No Labels Arizona has determined the boundaries of its association and structured itself to focus exclusively on securing ballot access for the offices of President and Vice President, consistent with the Party's objective of ensuring that Arizonans have a potential Presidential candidate option other than the candidates who may be selected at the Democratic and Republican conventions.

4.      Rather than follow Arizona law or the U.S. Constitution, Secretary Fontes is forcing No Labels Arizona to participate in elections for Arizona Corporation Commissioner and U.S. Senator.  By forcing No Labels Arizona to participate in an election against its desire and goals, Secretary Fontes has violated the Arizona law and the U.S. Constitution.

**PARTIES AND JURISDICTION**

5.      **Plaintiff The No Labels Party of Arizona** ("No Labels Arizona") is a recently recognized Arizona political party.  No Labels Arizona is a state-level affiliate of No Labels, Inc., which is a 501(c)(4) nonprofit headquartered in Washington, D.C.  No Labels, Inc. was established in 2009 to bridge the partisan divide in Washington by advancing commonsense reforms and convening officeholders from both major parties. No Labels, Inc. has a 13-year record of working across the aisle to effect change in many public policy areas.  No Labels Arizona was established for the specific purpose of placing yet-to-be-identified nominees for President and Vice President on the 2024 general-election ballot in Arizona, which is reflected in No Labels Arizona's adopted Constitution and Bylaws.

6.      **Defendant Adrian Fontes** ("Fontes") is the Secretary of State of Arizona and a resident of Arizona and is named in his official capacity only.  He is Arizona's chief election officer and is responsible for the administration and implementation of election laws in Arizona.  The Secretary, personally and through the conduct of his employees, officers, agents, and servants, acted under color of state law at all times relevant to this

action.

7.     Plaintiff brings this action under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation under color of state law of rights secured by the United States Constitution.

8.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343, because the matters in controversy arise under the Constitution and laws of the United States.

9.     This Court has supplemental jurisdiction over Plaintiff's state law claim under 28 U.S.C. § 1367 as it arises out of the same facts.

10.     This Court has personal jurisdiction over the Defendant.

11.     Venue is appropriate in this Court under 28 U.S.C. § 1391(b)(1) and (b)(2).

12.     This Court has the authority to enter a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## FACTUAL ALLEGATIONS

13.     No Labels Arizona's only current purpose is the potential nomination of candidates for President and Vice President for the 2024 General Election in Arizona.  No Labels Arizona envisions the potential nomination as being a unity ticket with a bipartisan consensus-oriented person fulfilling each role.

14.     As such, No Labels Arizona has no intent or desire to nominate candidates for any other office to appear on the 2024 general election ballot, at the state or federal level.   Instead, No Labels Arizona's sole focus is on the potential nomination of candidates for President and Vice President.

15.     No Labels Arizona's Constitution and Bylaws unambiguously set forth No Labels Arizona's mission.  Under this governing document, No Labels Arizona is to "obtain ballot access for candidates nominated by No Labels [Arizona] for the federal offices of President and Vice President" and "shall not nominate" a "candidate for a state, county, municipal, school, or district office or position."  No Labels Arizona, as expressed in its governing document, will not use its ballot line for an election for any office other than President or Vice President.

16.     No Labels Arizona has structured itself this way because it has determined this is the best way to pursue its associational goals.  The animating purpose of No Labels Arizona is to ensure that Arizonans have a potential alternative in the 2024 general election to the Presidential candidates who will be nominated by the major political parties.  This is the central reason individuals have associated with No Labels Arizona to date.  Any detour away from No Labels Arizona's mission threatens to fracture or repel the broad coalition that No Labels Arizona must attract to be successful.  And any diversion of time, resources, and/or attention will jeopardize No Labels Arizona's ability to achieve its core organizational objective.

17.     No Labels Arizona repeatedly informed the Secretary of No Labels Arizona's intention to nominate only candidates for President and Vice President.  A June 2, 2023, letter to the Secretary's counsel, for example, explained that as of that date "the No Labels Party will nominate a Presidential ticket 'as provided in § 16-344,' but it does *not* desire to have the names of any other candidates printed on the official ballot at the 2024 general election and will therefore not hold a primary election for any office."  No Labels Arizona's Chair sent a letter to the Secretary on August 11, 2023 opting out of the state's 2024 Presidential Preference Primary and informing the Secretary again that "the No Labels Party will nominate candidates only for the offices of President and Vice President, and does not desire to have the names of candidates for any other office printed on the official general-election ballot at the 2024 general election."  After learning of the statements of interest filed by candidates for Corporation Commission and U.S. Senate, on August 14, 2023, No Labels Arizona again informed the Secretary by letter that No Labels Arizona "does not intend to make nominations for any public office other than President and Vice President in 2024, and it would violate both Arizona law and the United States Constitution to force No Labels Arizona to participate in an election for any other public office against its will."

18.     Despite these clear and consistent communications about No Labels Arizona's intentions and mission, the Secretary has taken actions to force No Labels

1  Arizona to participate in elections for offices other than President and Vice President.

2      19.    Secretary Fontes indicated in a September 22, 2023 letter from his Elections

3  Director that any candidate of a party will be permitted to participate in Arizona's primary

4  election.  The response letter ignored the authorities cited in No Labels Arizona's letter,

5  including A.R.S. § 16-301(A) and the First Amendment.  Instead, the response letter

6  asserted that the "candidate who receives the highest number of votes in the Primary

7  Election will be the political party nominee and appear on the General Election ballot."

8      20.    The Secretary's acceptance of Statements of Interest from non-presidential

9  candidates and his declared intention to make the primary election winners No Labels

10  Arizona's nominees on the general election ballot if allowed to stand, would unlawfully

11  force No Labels Arizona to participate in an election for the offices of Corporation

12  Commissioner and U.S. Senator over No Labels' objections to associating with or

13  nominating any candidate for those offices. No Labels Arizona may not be compelled

14  under the Constitution and Arizona law to support, oppose, disavow, or otherwise

15  participate in the election of candidates for offices it wants nothing to do with.

16                    **CAUSES OF ACTION**

17  **Count 1: Violation of A.R.S. § 16-301(A): A.R.S. § 16-301(A); 22 U.S.C. § 2201; 22**

18                **U.S.C. § 2202; A.R.S. § 12-1832.**

19      21.    No Labels Arizona incorporates and realleges all preceding paragraphs as

20  if set forth fully herein.

21      22.    28 U.S.C. § 2201 and A.R.S. § 12-1832 allows this Court to provide No

22  Labels Arizona with a declaration of its rights under law and 28 U.S.C. § 2202 allows

23  what other and further relief may be appropriate.

24      23.    This Court also has the authority to enter an injunction. *Melendres v.*

25  *Arpaio*, 784 F.3d 1254, 1264 (9th Cir. 2015) (noting the district court has broad discretion

26  in fashioning a remedy, including by entering an injunction).

27

28

- 6 -

24.     Section 16-301(A) identifies when a candidate's name should be included on a primary election ballot:

> At a primary election, each political party entitled and **_intending_** to make nominations for the ensuing general or special election, **_if it desires_** to have the names of its candidates printed on the official ballot at that general or special election, shall nominate its candidates for all elective, senatorial, congressional, state, judicial, county and precinct offices to be filled at such election except as provided in § 16-344.

A.R.S. § 16-301(A) (emphasis added).

25.     The cross-referenced statute, A.R.S. § 16-344, does not apply here because the offices at issue do not involve the office of presidential elector, which is the office that is addressed in § 16-344.

26.     Secretary Fontes has violated A.R.S. § 16-301(A).

27.     No Labels Arizona does not intend to make nominations in the ensuing general election for Corporation Commissioner or U.S. Senator.

28.     Consequently, No Labels Arizona does not desire to have the names of any candidates for Corporation Commissioner or U.S. Senator printed on the general election ballot.

29.     In fact, No Labels Arizona's Constitution and Bylaws provide that No Labels Arizona "shall not nominate" a candidate for any office other than President and Vice President.  The Constitution and Bylaws further limit the membership from taking any action inconsistent with this prohibition.

30.     In violation of Arizona law, Secretary Fontes is forcing No Labels Arizona to nominate candidates for elections in which it has no intent or desire to participate.

**<u>Count 2: First and Fourteenth Amendment: U.S. Const. Amend. I and XIV, 42 U.S.C. § 1983, 28 U.S.C. §§ 2201, 2202.</u>**

31.     No Labels Arizona incorporates and realleges all preceding paragraphs as if set forth fully herein.

32.     No Labels Arizona brings this claim under 42 U.S.C. § 1983 and the First and Fourteenth Amendments. Section 1983 provides a cause of action for a violation of

constitutional rights:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

33.   28 U.S.C. § 2201 allows this Court to provide No Labels Arizona with a declaration of its rights under the United States Constitution, and 28 U.S.C. § 2202 allows what other and further relief may be appropriate.  This Court also has the authority to enter an injunction.  *Melendres*, 784 F.3d at 1264 (noting the district court has broad discretion in fashioning a remedy, including by entering an injunction).

34.   "[A] corollary of the [First Amendment] right to associate is the right not to associate."  *Cal. Democratic Party v. Jones*, 530 U.S. 567, 574 (2000).  "This First Amendment freedom to gather in association for the purpose of advancing shared beliefs is protected by the Fourteenth Amendment from infringement by any State."  *Democratic Party of U. S. v. Wis. ex rel. La Follette*, 450 U.S. 107, 121 (1981).  Courts have repeatedly and "vigorously affirm[ed] the special place the First Amendment reserves for, and the special protection it accords, the process by which a political party 'select[s] a standard bearer who best represents the party's ideologies and preferences,'" *Jones,* 530 U.S. at 575,  holding that a state may not substitute its own judgment for that of an organization in determining "the structure which best allows it to pursue its political goals," *Tashjian*, 479 U.S. at 224.  This "special protection" allows an organization to "choose a candidate-selection process that will in its view produce the nominee who best represents its political platform."  *Lopez Torres*, 552 U.S. at 202 (2008).  "The political parties are autonomous in their extension of the right to represent their party." *Duke v. Cleland*, 783 F. Supp. 600, 602 (N.D. Ga. 1992), *aff'd*, 954 F.2d 1526 (11th Cir. 1992).

35.   A party's rights in this respect can be "circumscribed" only if the organization chooses to avail itself of "the right to have their candidates appear with party endorsement on the general-election ballot." *Lopez Torres*, 552 U.S. at 203.   At a fundamental level, an organization has a core right and ability to structure its party and choose for itself the public offices for which it will put forward a nominee to appear on the general-election ballot and thereby accept or reject "circumscription" from the state. This decision to accept or reject state "circumscription" and its attendant consequences is, by its nature, entirely private and internal to an organization and cannot be overridden.

36.   Courts have protected against state-compelled participation and association, for example, by refusing to require that a state's election ballot create an unreciprocated association between a party and a candidate, *see Jones*, 530 U.S. at 581–82 ("We can think of no heavier burden on a political party's associational freedom" than "forced association"), and by rejecting a candidate's insistence that she be allowed to compete for a party's general-election nomination via direct primary, *see Lopez Torres*, 552 U.S. at 202–04; *see also Belluso v. Poythress*, 485 F. Supp. 904, 912 (N.D. Ga. 1980) ("Belluso asserts no group's interest in advancing his candidacy. His claimed need to 'associate' with an unwilling partner, the Republican party in Georgia, is not a first amendment right. Indeed, to the degree that rights of association are implicated, we think these rights militate in favor of leaving a party free to limit access to its own primary ballot."); *Cleland*, 783 F. Supp. at 602 ("Likewise, plaintiffs have failed to show the court that a first amendment right exists which guarantees access to a party's primary ballot (in direct contravention of the party's stated desires)."); *Duke v. Massey*, 87 F.3d 1226, 1234 (11th Cir. 1996) ("The Republican Party has a First Amendment right to freedom of association and an attendant right to identify those who constitute the party based on political beliefs.").   Lastly, courts have recognized that a "minor" political party's First Amendment rights are "severely burden[ed]" when a state "forces" the party to run "candidates for races they want nothing to do with." *Libertarian Party of Ill. v. Scholz*, 872 F.3d 518, 524–25 (7th Cir. 2017).

37.     To be clear, although at least one of the individuals who is seeking to secure the No Labels Arizona nomination has publicly stated that the goal of the activity "is to torture No Labels," No Labels Arizona is not seeking protection against unaffiliated voters or candidates who are ideologically incompatible.  No Labels Arizona objects to the Secretary's acceptance of statements of interest filed by candidates for Corporation Commission and U.S. Senate because it does not want to nominate *anyone* or participate in *any* election for these or any other down-ballot offices.

38.     No Labels Arizona has deliberately structured itself to best pursue its goals. No Labels Arizona's objective is to nominate consensus candidates for President and Vice President.  To accomplish this, No Labels Arizona has chosen not to use its ballot line in primary elections and in the 2024 general election for any offices besides United States President or Vice President.  Its goals would be undermined by participating in any other election.

39.     Furthering its goals, No Labels Arizona does not intend or desire to nominate a candidate for any other office.  To the extent Secretary Fontes may disagree with No Labels Arizona's structure and goals, he may not substitute his own judgment for that of the party.  *Democratic Party of U. S.*, 450 U.S. at 123, 126 (reversing judgment where the state statute "would violate Party rules").

40.     Ignoring No Labels Arizona's considered judgment and the constitutional guarantees, Secretary Fontes is forcing No Labels Arizona to associate with and nominate candidates for elections in which it has no desire to participate.

41.     No Labels Arizona's structure and objectives do not burden any would-be candidate's right to run for their desired offices.  They may proceed as independents or with another party that wishes to participate in the election for the office the candidate seeks.  *See, e.g.*, *Belluso*, 485 F. Supp. at 912 (noting the candidate can seek office "independently or as the candidate of [another] political party").  And no individual has a right to appear on a ballot as a party's candidate or nominee.  *See, e.g.*, *Lopez Torres*, 552 U.S. at 205 ("None of our cases establishes an individual's constitutional right to

have a 'fair shot' at winning [a] party's nomination.").

42.   Similarly, voters also are not prohibited from supporting any candidates in their pursuit of a public office.  *Massey*, 87 F.3d at 1234 ("Duke's supporters were not foreclosed from supporting him as an independent candidate, or as a third-party candidate").

43.   Candidates and voters can continue to exercise their rights, but those rights do not override No Labels Arizona's rights.  *Id.* at 1232–33 ("Although Duke is correct in identifying his First and Fourteenth Amendment interests, those interests do not trump the Republican Party's right to identify its membership based on political beliefs nor the state's interests in protecting the Republican Party's right to define itself.")

44.   Secretary Fontes' actions have violated the First and Fourteenth Amendments.

### PRAYER FOR RELIEF

No Labels Arizona prays for relief as follows:

1.   That the Court declare that Secretary Fontes has violated A.R.S. § 16-301(A);

2.   That the Court declare that Secretary Fontes has violated the First and Fourteenth Amendments;

3.   That the Court preliminary and permanently enjoin Secretary Fontes from forcing No Labels Arizona to associate with and nominate a candidate for Corporation Commissioner and U.S. Senator or for any other office;

4.   That the Court award attorneys' fees and litigation costs to No Labels Arizona under 42 U.S.C. § 1988(b);

5.   That the Court retain jurisdiction to ensure Secretary Fontes' compliance with its orders; and

6.    That the Court grant all other and further relief as it may deem necessary and appropriate.

DATED this 19th day of October, 2023.

OSBORN MALEDON, P.A.


By    /s/ David B. Rosenbaum
        David B. Rosenbaum
        Andrew G. Pappas
        Emma J. Cone-Roddy
        Brandon T. Delgado
        2929 North Central Avenue, 20th Floor
        Phoenix, Arizona 85012-2793

        Attorneys for Plaintiff

- 12 -