# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NO LABELS,<br><br>    *Plaintiff*,<br><br>v.<br><br>NOLABELS.COM INC.,<br><br>    *Defendant*. | Case No. 1:23-cv-01384-GBW |

**PARTIES' JOINT STATUS REPORT PURSUANT TO
REQUEST OF SPECIAL MASTER STEPHEN B. BRAUERMAN**

**I. Joint Summary of the Procedural Posture of the Case.**

Plaintiff No Labels ("Plaintiff" or "No Labels") filed its Complaint and Motion for Temporary Restraining Order ("TRO") and/or Preliminary Injunction ("PI") on December 4, 2023. Plaintiff filed its Motion for Expedited Discovery on December 8, 2023, which was denied on December 11, 2023. Defendant NoLabels.com Inc. ("Defendant") filed its Opposition to Plaintiff's Motion for TRO on December 14, 2023, and a hearing on the TRO was held on December 15, 2023.

The Court granted Plaintiff's TRO and, in response to the parties' request, the Court granted leave for the parties to engage in expedited discovery at the December 15, 2023, hearing. On December 20, 2023, the Court set an evidentiary hearing on Plaintiff's Motion for Preliminary Injunction (the "PI Hearing") for February 22, 2024, and required that the parties identify all testifying witnesses by February 15, 2024. The Court's Order also extended the TRO through resolution of the Motion for Preliminary Injunction.

The parties have served Rule 30(b)(6) depositions notices on one another as well as serving third-party subpoenas, seeking both depositions and documents. No depositions have occurred to date.

## II.   Brief Summary of Substantive Positions of the Parties.

### Plaintiff's Summary

Plaintiff brought this action to enjoin Defendant from continuing to infringe its NO LABELS Registered Trademark through Defendant's website located at nolabels.com (the "Infringing Website" at the "Infringing Domain").[1] The Infringing Website was visually similar to Plaintiff's website, utilizing—in addition to the NO LABELS mark—similar colors, imagery, and key phrases. Plaintiff alleges that Defendant's actions constitute not only trademark infringement under 15 U.S.C. §§1114 and 1125, but also cybersquatting by intentionally using Plaintiff's registered, incontestable mark in the Infringing Domain name to benefit Defendant and/or to harm Plaintiff. Though the Court agreed that No Labels is likely to succeed on the merits of its claims (and imposed a TRO compelling Defendant to take down its website and cease using the NO LABELS mark), Defendant denies all substantive allegations and asserted counterclaims for a declaratory judgment that Plaintiff's mark is generic and for cancellation of the allegedly generic mark. Plaintiff has already demonstrated – through its Complaint and Motion – the strength of the NO LABELS mark and will provide additional evidence of the same through its document production.

---

[1] Plaintiff's website is located at nolabels.org. Plaintiff previously owned the nolabels.com domain but inadvertently failed to renew that registration. Plaintiff (apparently through a proxy) then purchased nolabels.com and used that domain to host its infringing and misleading website.

No Labels disputes Defendant's contention that its conduct is not commercial and falls outside the ambit of the Lanham Act, which is contrary to established authority cited at the December 15 hearing. No Labels also disputes that its NO LABELS mark has become generic.

### Defendant's Summary

The Defendant states that its First Amendment rights should not be abridged because the "No Labels" mark is being used well beyond the scope of its registration and has become the generic term for the "No Labels" grassroots bipartisan movement.[2] The mark is not legally protectible because it "convey[s] an informational message" – support for a movement – that emanates from "multiple different sources." Office Action Letter, U.S. Patent & Trademark Office, *In re Application No. 87659312*, Docket No. 990999.09952 (Feb. 2, 2018) (declining registration of "Black Lives Matter") (cleaned up). Accordingly, the Defendant has sought cancellation of the mark.

Beyond that, the Plaintiff's Lanham Act and cybersquatting claims lack the commercial nexus required by either theory. The Defendant's speech is political, and subject to the full protection of the First Amendment. The Defendant does not sell any products, made no effort to sell the website at issue (which it obtained after the Plaintiff abandoned it years earlier), and never solicited any donations. The Defendant simply conveyed a message about how the U.S. political system should operate.

Finally, there is scant evidence of any confusion or irreparable harm. The Defendant has always designated themselves as "NoLabels.com" and added a legend on their website indicating their lack affiliation with the Plaintiff. In response, the Plaintiff offers the testimony of a single

---

[2] The following is provided solely as a summary and is not meant to limit the Defendant's rights in any way.

person, a life-long friend of their Texas organizer who openly admits that she was not ultimately confused. Except for this confusion that wasn't, the Plaintiff has offered no evidence of any harm.

**III.  Identification (Without Argument) of Outstanding Discovery Issues About Which the Parties Require Assistance.**

### Plaintiff's Discovery Issues

Plaintiff identifies the following outstanding discovery issues on which they require the Special Master's assistance:

a. **Timing of first conference with the Special Master.** In view of the urgency, and Defendant's heavy use of redaction to render its production largely worthless, No Labels requests a remote conference with the Special Master at the earliest opportunity – if possible, on Wednesday, January 17 – to set a schedule for resolving open disputes.

b. **Scope of Plaintiff's document requests.** Defendant is refusing to produce documents revealing the identity of key personnel involved in the conduct underlying the Complaint and TRO. Currently, Defendant objects to producing information concerning any persons other than its directors and officers and has represented that it has no employees. Defendant's document production is heavily redacted, presumably in furtherance of this position. Specifically, it appears that Defendant redacted not only the names of persons involved in procuring the Infringing Domain, but also the names of its supporters and those who subscribed to its mailing list.

c. **Scope of Defendant's document requests.** For example, requests concerning Plaintiff's legal entity status, Plaintiff's alleged signature collection and voter targeting, and Plaintiff's alleged endorsement of candidates – which No Labels contends are not relevant.

   d. **Scope of third-party subpoenas.** For example, Plaintiff has objected to Defendant's stated intention to depose each of Plaintiff's state affiliates, which exceed twenty in number.

   e. **Form of confidentiality order.** Plaintiff proposes a two-tier confidentiality order with a rapid procedure for resolving disputes concerning confidentiality designations. Defendant proposes a single-tier confidentiality order.

   f. **Timing/sequence of depositions.** No Labels served its 30(b)(6) deposition notice before Defendant served any deposition notices, yet Defendant is insisting that its noticed third-party depositions must proceed first. No Labels should be permitted to schedule the first deposition.

   g. **Timing/sequence of expert disclosures.** No Labels requests that the Special Master address the timing/sequence of any expert disclosures relevant to the PI Hearing.

**Defendant's Discovery Issues**

Defendant identifies the following outstanding discovery issues on which they require the Special Master's assistance:

   a. **Timing of first conference with the Special Master.** In view of the Plaintiff's limited production and unwillingness to tender any witnesses whatsoever without intervention from the Special Master, the Defendant requests a remote conference as soon as possible.

   b. **Subpoenas directed to defense counsel.** The Plaintiff has directed subpoenas to defense counsel demanding copies of the Defendant's engagement letters and for information as to the source of funds used to pay their legal fees.

   c. **Scope of Plaintiff's document requests.** The Plaintiff is seeking the identity of the Defendant's funders, vendors, and others who have voluntarily associated with it, a request

that implicates the First Amendment rights of the Defendant as well as the third parties that the Plaintiff wishes to identify. The Defendant further objected to discovery into its corporate formation, communication with domain registrars and financial expenditures based on relevance.

d. **Plaintiff's production.** The Plaintiff's production contains not a single license and omits governing documents for at least fourteen state parties. To the extent that these documents exist, the Plaintiff agreed to produce them; the Defendant strongly suspects that this production is far from complete.

e. **Scope of the subpoenas directed to state parties.** There are at least twenty U.S. political parties using the "No Labels" mark. The Defendant has subpoenaed three; Plaintiff has agreed to represent each of them. Each state party has refused to appear and objected to topics concerning the relationship between these parties and the Plaintiff, damages associated with NoLabels.com's existence, potential candidates, the Plaintiff's 501(c)(4) status or signature collection efforts.

f. **Scope of Defendant's document requests and deposition notice.** Plaintiff is refusing to testify or produce documents concerning its relationship with the state "No Labels" parties, damages, potential candidates, its Problem Solver's convention, the Plaintiff's affiliation with Donald J. Trump, the Plaintiff's 501(c)(4) status, ballot access, voter targeting or signature collection efforts.

g. **Form of confidentiality order.** Defendant proposes a single-tier confidentiality order with a rapid dispute resolution process.

h. **Timing/sequence of depositions.** The Plaintiff was scheduled to proceed first and elected not to. It unilaterally cancelled the deposition less than forty-eight hours before it was set

to start, and after the 30(b)(6) witness had already embarked. The Defendant submits that there is no need for a Plaintiff's first deposition schedule.

IV. **Explanation of Timing Considerations in This Matter (*e.g.*, How Quickly the Parties Desire Discovery Disputes to be Resolved, Important Upcoming Deadlines Before Judge Williams, Etc.)**

Because the PI Hearing is scheduled for February 22, 2024, and the Parties must identify witnesses by the week prior, the Parties have limited time in which to conduct discovery, including the requisite depositions. Therefore, the Parties suggest an expedited briefing schedule for any discovery disputes for which the Special Master requests briefing, including a ten (10) page limit on Motions to Compel, with any opposition limited to ten (10) pages and due five (5) calendar days after the Motion is filed, and no reply briefs permitted. The Parties agree to remote hearings as needed on any discovery dispute.

Consistent with the draft protective orders proposed by the parties, the process for objecting to confidentiality designations is expected to be rapid, and the parties respectfully request, to the extent practicable, that the Special Master make himself available to promptly resolve any such objections.

V. **Anything Else the Parties Believe the Special Master Should Know.**

**Plaintiff:** In light of the scope of the disputes above, particularly those relevant to the third-party subpoenas, Plaintiff respectfully requests that they be permitted to contact the Special Master by telephone during noticed depositions to address any such disputes contemporaneously. The Parties will attempt to give the Special Master advance notice of anticipated disputes.

**Defendant:** Telephonic intervention for deposition disputes.

Dated: January 16, 2024

*Of Counsel:*

Mark D. Lytle (admitted *pro hac vice*)
**NIXON PEABODY LLP**
799 9th Street NW
Suite 500
Washington, DC 20001
Tel:  (202) 585-8435
Fax:  (907) 331-4726
Email:  mlytle@nixonpeabody.com

Jason C. Kravitz (admitted *pro hac vice*)
Leslie E. Hartford (admitted *pro hac vice*)
Exchange Place
53 State Street
Boston, Massachusetts 02109
Tel:  (617) 345-1031
Fax:  (617) 345-1300
Email:  jkravitz@nixonpeabody.com
         lhartford@nixonpeabody.com

Bradley J. Schlozman (admitted *pro hac vice*)
**HINKLE LAW FIRM LLC**
1617 North Waterfront Parkway, Suite 400
Wichita, KS 67206-6639
Phone:  (316) 660-6296
Fax:  (316) 264-1518
Email: bschlozman@hinklaw.com

Elizabeth S. Fenton (Bar No. 5563)
**BALLARD SPAHR LLP**
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Office:  302-252-4465
Email: fentone@ballardspahr.com

**HALLORAN FARKAS + KITTILA LLP**

*/s/ William E. Green, Jr.*
Theodore A. Kittila (Bar No. 3963)
William E. Green, Jr. (Bar No. 4864)
5801 Kennett Pike, Suite C/D
Wilmington, Delaware 19807
Phone:  (302) 257-2025
Fax:  (302) 257-2019
Email:  tk@hfk.law / wg@hfk.law

*Attorneys for Plaintiff*

**BILLION LAW**

*/s/ Mark. M. Billion*
Mark M. Billion (Bar No. 5263)
1073 S. Governors Avenue
Dover, DE  19904
Office:  302-428-9400
Email:  mbillion@billionlawgroup.com

*For the Defendant*