IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NO LABELS,

           *Plaintiff*,

   v.

NOLABELS.COM INC.,

           *Defendant*.

C.A. No. 23-1384-GBW
[Unsealed on 6/21/24]

## SPECIAL MASTER ORDER NUMBER #3

WHEREAS, by Order dated January 9, 2024 (D.I. 41), the Court appointed Stephen B. Brauerman as Special Master (the "Special Master") in C.A. No. 23-1384-GBW pursuant to Federal Rule of Civil Procedure 53(a)(1)(C);

WHEREAS, on January 19, 2024, Plaintiff No Labels ("Plaintiff") submitted to the Special Master a Letter Motion to Compel the production of certain documents requested in Plaintiff's Request for Production of Documents to Defendant NoLabels.com Inc. ("Defendant") pursuant to Federal Rule of Civil Procedure 34 and corresponding deposition topics set forth in a Notice of Deposition pursuant to Federal Rule of Civil Procedure 30(b)(6) (the "Motion");

WHEREAS, on January 23, 2024, Defendant submitted to the Special Master a letter brief in opposition to Plaintiff's Motion;[1]

WHEREAS, by e-mail dated January 24, 2024, the Special Master requested copies of the discovery at issue and the transcript of the December 15, 2023, Hearing on Plaintiff's Motion for a Temporary Restraining Order before Judge Williams (the "TRO Hearing"), which the parties submitted to the Special Master the same day;

---

[1] The parties' letter briefs are attached hereto as Exhibits A and B.

1

WHEREAS, the Special Master held a telephone conference on January 25, 2024, during which the parties set forth their respective arguments and responded to questions from the Special Master (the "Discovery Conference");[2] and

WHEREAS, after considering the parties' letter briefs and the arguments during the January 25, 2024 Discovery Conference, the Special Master finds as follows:

1. **Judge Williams Has Not Determined The Appropriate Scope of Expedited Discovery in This Action**

Preliminarily, I address Defendant's argument that the Court "thrice" denied the discovery Plaintiff seeks to compel in this Motion and, as a result, the parties and the Special Master are bound by the Court's prior ruling. (Ex. B at 1-3.) While it is certainly true that the Special Master and the parties would be bound by a prior ruling of the Court, I disagree that Judge Williams' prior rulings foreclose the discovery Plaintiff seeks here.

Plaintiff filed an Emergency Motion for Expedite Discovery (the "Motion to Expedite") on December 8, 2023. (D.I. 14.) Three days later, on December 11, 2023, and before Defendant responded to the Motion to Expedite, the Court docketed an Oral Order denying the Motion to Expedite after finding that "Plaintiff's requested expedited discovery is overly broad and the Court fails to see the necessity of such broad expedited discovery at this time as it relates to the pending Motion for Temporary Restraining Order/Preliminary Injunction, given the Court can grant or deny the motion without such information." (D.I. 18.)

The question of expedited discovery came up four days later at the TRO Hearing, where the Court observed that "both sides are interested in expedited discovery." (12/15/23 Tr. at 65:11-13.) The Court directed the parties to "meet and confer and see whether you can agree to some limited scope of expedited discovery, whether you can reach an agreement on that. If you

---

[2] A transcript of this Discovery Conference is maintained in the files of the Special Master.

can't, then come back to the Court with your proposed requests for expedited discovery again making sure that your scope of your discovery is tied to the claims in this action and necessary in terms of being expedited –" (*Id.* at 66:22-67:7.)

Consistent with this instruction, the Court's December 15, 2023 Temporary Restraining Order directed the parties to "meet and confer on or before 5:00 p.m. ET on Monday, December 18, 2023. The parties shall file a joint status report, not to exceed three (3) pages, on or before 5:00 p.m. ET on Tuesday, December 19, 2023. The joint status report shall update the Court on any agreements the parties have reached on the scope of expedited discovery, the schedule of expedited discovery, and proposed dates for a preliminary injunction hearing. To the extent the parties are unable to reach complete agreement on the scope of expedited discovery, the schedule of expedited discovery, and/or proposed dates for a preliminary injunction hearing, the parties shall specify the portions to which they agree and submit their respective proposals on the portions to which they are not in agreement." (D.I. 26 ¶ 5.[3])

Pursuant to the Court's order, the parties filed a Joint Status Report on December 19, 2023 detailing various disagreements about discovery. (D.I. 28.) The parties also docketed a request for a teleconference to discuss discovery issues. (D.I. 30.) On December 20, 2023, the Court referred the case to the Clerk for assignment of a special master. (D.I. 33.) On January 9, 2024, without addressing the parties' discovery disputes, the Court entered an order appointing

---

[3] Defendant suggests that the Court's inclusion of the foregoing Paragraph 5 in lieu of Paragraph 4 from Plaintiff's proposed form of temporary restraining order, is a determination about the proper scope of discovery. (Ex. B at 2; *compare* D.I. 26 ¶ 5 *with* D.I. 3-1 ¶ 4 ("Effective as of the date of this Order, Plaintiff is authorized to conduct expedited discovery to, *inter alia*, ascertain the identity of all individuals and organizations involved in the Infringing Website and Infringing Domain as well as to determine Defendant's intent and the scope of the infringement. Defendant shall make its witness(es) available within five business days of service by email of a deposition notice.").) I disagree. To the contrary, the Court's direction that the parties meet and confer reflects a desire to obtain the parties' input before deciding the appropriate scope of expedited discovery.

the Special Master (the "Special Master Order"). (D.I. 41.) The Special Master Order gave the Special Master the authority to "hear, resolve, and make rulings on all disputes regarding discovery and, when appropriate, enter orders setting forth [his] rulings." (*Id.* ¶ 3.) When the Special Master Order was entered, the Court had not resolved the parties' disputes about the scope of expedited discovery, which the Court referred to the Special Master. As a consequence and bearing in mind the Court's instruction that expedited discovery requests must be "tied to the claims in this action and necessary," I will next consider the substance of Plaintiff's Motion. (12/15/23 Tr. at 67:5-7.)

### 2. Plaintiff's Motion to Compel is Granted in Part and Denied in Part

The Motion seeks to compel several categories of information:[4] (1) the identities of the individuals/entities involved in the alleged infringement; (2) discovery concerning the development and launch of Defendant's allegedly infringing website; (3) discovery concerning the acquisition of the nolabels.com domain; (4) corporate formation documents; (5) discovery concerning the Google advertising campaign Defendant allegedly utilized to promote its nolabels.com website; (6) a privilege log identifying documents withheld by Defendant; and (7) subpoenas directed to Defendant's counsel seeking engagement letters and the identity of anyone paying Defendant's legal fees in this action (the "Counsel Subpoenas"). (Ex. A at 2, 4-5.) During the Discovery Conference: (i) the parties confirmed that they had resolved the privilege log dispute (1/26/24 Tr. at 32-33); (ii) Defendant agreed to produce corporate formation documents, including communications with the incorporator, in its possession, custody, or control, to the extent such documents exist and were not already produced by third-party

---

[4] The parties agreed that the Special Master's resolution of these issues as to Plaintiff's document requests would also govern Plaintiff's corresponding Rule 30(b)(6) deposition topics. The Special Master does not, therefore, separately address the deposition topics implicated by the Motion.

4

subpoena recipients (1/26/24 Tr. at 51-58); (iii) Plaintiff withdrew its Motion to compel the production of documents in response to Request No. 10 (1/26/24 Tr. at 71:24-72:4); and (iv) the parties agreed to defer consideration of the Counsel Subpoenas in favor of a meet and confer to try to resolve the dispute (1/26/24 Tr. at 130:24-136:3). I turn now to the parties' remaining disputes.

### A.  The Identities of the Individuals/Entities Involved in the Alleged Infringement

Defendant objects to several of Plaintiff's document requests on First Amendment grounds "[b]ecause the requested documents would identify individuals whose association with the Defendant is not public . . ." (Defendant's Objections to Plaintiff's First Request for Production of Documents to Defendant NOLABELS.COM at 4-9.) Both parties devoted substantial attention to Plaintiff's stated desire to "unmask" who is behind Defendant's corporate form and the threat to the associational rights of Defendant's "members."[5] (*E.g.*, Ex. B at 2.) I find this attention misplaced for several reasons. First, Defendant already identified its two principal officers and confirmed that, as a non-stock corporation, Defendant does not have any stockholders leaving little, if anything, to further "unmask." (1/25/24 Tr. at 52:18, 57:15-20.) Second, Plaintiff confirmed that it is not seeking the identity of Defendant's members, donors, volunteers, or individuals who joined Defendant's organization. (Ex. A at 2-3.) Third, while some of Plaintiff's discovery requests are facially overbroad, Plaintiff focused its requests on the individual/entities "who are either involved in the infringing conduct or who are undeniably relevant and important witnesses based on Defendant's highly redacted document production." (Ex. A at 2.) I find this narrowing consistent with Judge Williams' instruction that expedited discovery requests must be "tied to the claims in this action and necessary" and evidence not of a

---

[5] It is not clear whether Defendant has members and how one might join its organization.

desire to "unmask," but rather to prove the elements necessary to obtain a preliminary injunction. Finally, the stipulated Protective Order the Court entered on January 25, 2024 potentially offers further protection for Defendant to designate responsive documents as "confidential" or "attorneys' eyes only," further mitigating the risk of public disclosure of individuals or entities associated in some way with Defendant that could have a chilling effect on their associational rights. (D.I. 56.)

The parties disagree on the standard I should use to evaluate Defendant's First Amendment objection. Plaintiff contends that I should apply the test set forth in *Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010). (Ex. A at 2.) Defendant contends that I should apply the test set forth in *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010). (Ex. B at 5.) *Arista Records* considers "(1) [the] concrete[ness of the plaintiff's] showing of a prima facie claim of actionable harm, ... (2) [the] specificity of the discovery request, ... (3) the absence of alternative means to obtain the subpoenaed information, ... (4) [the] need for the subpoenaed information to advance the claim, ... and (5) the [objecting] party's expectation of privacy." 604 F.3d at 119.[6] *Perry* suggests a two-tiered framework that requires the party asserting the privilege to demonstrate a *prima facie* showing of arguable first amendment infringement and, if shown, the party propounding the discovery to demonstrate a need for the disclosures sufficient to outweigh the First Amendment concerns. 591 F.3d 1147 at 1161. I do not find conflict between these analytical frameworks, but nevertheless consider both standards in evaluating the propriety of Defendant's First Amendment Objection.

---

[6] While *Arista Records* considered the First Amendment implications in the context of a challenge to a third-party subpoena, the test also has been applied to party discovery. *Everytown for Gun Safety Action Fund Inc. v. Defcad, Inc.*, 2021 U.S. Dist. LEXIS 218103, at *4 (S.D.N.Y. Nov. 9, 2021).

6

Preliminarily, it is not clear to me that Defendant has standing to assert the objection, at least with respect to all challenged disclosures.[7] *See, e.g.*, *Everytown*, 2021 U.S. Dist. LEXIS 218103, at *4 (holding that a party must demonstrate a particularized injury to its own rights, not the rights of third parties). In its letter brief, Plaintiff identified two documents that exemplify the parties' First Amendment dispute. (Ex. A at Ex. 1-2.) These documents, produced by Defendant in response to Plaintiff's document requests, redact only the identity of the declarant. (*Id.*) At the hearing, Defendant expressed concern for the First Amendment rights of the declarants of these documents but did not identify any harm Defendant would suffer if Plaintiff learned the identity of these third-party declarants. (*See, e.g.*, 1/25/24 Tr. at 107:7-110:6.) Plaintiff did not challenge Defendant's standing. (*See generally* Ex. A.) Regardless, because I find that Plaintiff's discovery requests, as narrowed by this decision, are appropriate under *Arista Records* and *Perry*, I assume (while harboring considerable skepticism) that Defendant has standing to assert its First Amendment challenge.

Applying the *Arista Records* test, I find that the Temporary Restraining Order satisfies Plaintiff's obligation to demonstrate a *prima facie* claim of actionable harm. As mentioned above, some of Plaintiff's discovery requests are patently overbroad, but the narrowed requests (*e.g.* for the identities of the actors directly involved in allegedly infringing activities) are sufficiently specific and limited to comport with the requirements of *Arista Records* and the Court's guidance. I am aware of no alternative means to obtain the requested information and

---

[7] Defendant would have First Amendment standing to challenge the production of its donor, membership, and volunteer lists, but Plaintiff does not seek such documents in its Motion. *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 458 (1958) (holding that NAACP had standing to represent the First Amendment interests of its members "to be protected from *compelled disclosure* by the State of their affiliation with the [NAACP] as revealed by the membership lists."); *United States v. Loc. 560 (I.B.T.)*, 974 F.2d 315, 339–40 (3d Cir. 1992) (explaining test for determining whether an organization may sue in a representative capacity on behalf of its membership).

the parties have not identified any. Plaintiff has shown that the requested information is necessary at least to discern Defendant's intent in adopting the mark, to understand the scope of Defendant's alleged infringement, to challenge Defendant's genericness and non-commercial use defenses, to demonstrate confusion concerning the mark, and to admit evidence at the evidentiary preliminary injunction hearing on February 22, 2024.[8]  I am less persuaded that the potential personal liability of Defendant's agents justifies the requested disclosures, but discovery of their conduct and communications are necessary to establish Defendant's infringing conduct. Finally, it is not clear to me that Defendant has any expectation of privacy in the communication of third parties to its contact@nolabels.com e-mail address or in the identity of the individuals through whom it acts. I therefore find that Plaintiff has satisfied the *Arista Records* test for the narrowed discovery it seeks.

The *Perry* test does not compel a different result. I do not believe that Defendant established a *prima facie* showing of arguable first amendment infringement. Plaintiff does not seek discovery of Defendant's members, donors, or volunteers. The identity of individuals who contact Defendant through its allegedly infringing website or through whom it acted do not, in my view, implicate the First Amendment associational concerns identified in the cases cited by the parties. Even if it did, the permitted discovery is narrowly tailored, necessary, and outweighs any legitimate First Amendment concerns. *See Bloomberg, L.P. v. Doe,* 2013 U.S. Dist. LEXIS 130034, *9 (S.D.N.Y. June 26, 2013) ("Defendant is entitled only to a 'minimal expectation of privacy' in this case, where Plaintiffs have alleged what appear to be meritorious trademark infringement claims and must determine Defendant' identity in order to litigate those claims.").

---

[8] Without knowing the identities of the declarants of the two exemplary documents submitted to the Special Master, Plaintiff may not be able to establish an exception to the hearsay rule or present a sponsoring witness necessary to admit these out of court statements.

Having concluded that Defendant's First Amendment objections are misplaced, I grant Plaintiff's Motion and hereby order that Defendant produce, without redactions, documents responsive to Request Nos. 1, 2, 8, 9, and 11, 12.  I deny Plaintiff's request for the production of documents concerning – and I explicitly hold that Defendant need not produce – donor, volunteer, or member lists in response to Plaintiff's discovery requests.  I will not prejudge any confidentiality designation Defendant may apply to these documents under the Protective Order.

### B. Discovery Concerning the Acquisition, Development, and/or Launch of the nolabels.com Domain

It is unclear whether Defendant offers additional objections, beyond those grounded in the First Amendment, to Plaintiff's discovery requests concerning the acquisition, development and/or launch of the nolabels.com domain.  To the extent Defendant's objections are not resolved by my earlier rulings, I find that expedited discovery into these topics is narrow and appropriate.  Defendant's allegedly infringing website is at the heart of Plaintiff's trademark infringement claims and the Court's determination of the preliminary injunctive relief Plaintiff seeks.  (D.I. 18.)  I therefore grant Plaintiff's Motion, with respect to Request Nos. 1, 2, 9, 16, and 17, to the extent these requests seek discovery concerning the acquisition, development, and/or launch of the nolabels.com domain and the content of information placed on the website hosted thereon.  To the extent these requests seek information beyond these topics, for example in Request No. 17, the Motion is denied.  To the extent communications with third parties American Patriot Project, Dan.com, Domains by Proxy LLC, and/or GoDaddy LLC implicate these topics, the Motion is granted.  To the extent Defendant has engaged in other communications with these or other third parties, the Motion is denied and Defendant need not produce such documents at this time.

### C. Discovery Concerning Defendant's Finances

Plaintiff next seeks to compel discovery "sufficient to identify all individuals who have provided financial support to Defendant" and "sufficient to show all of Defendant's financial transactions, including without limitation any financial transactions concerning the NoLabels.com Domain and/or its purchase of Google Adwords search advertising through a vendor." (Plaintiff's Request for Production Nos. 5 and 14.) I find that Plaintiff's request for discovery into Defendant's finances, except as permitted with respect to the acquisition of the allegedly infringing domain and the Google ad campaign discussed below, should be denied. Plaintiff has not shown that this discovery is necessary to establish the elements of the preliminary injunctive relief it seeks or will otherwise lead to the discovery of admissible evidence. To the extent that Plaintiff pursues a damages claim later in the case, I reserve the right to revisit this decision, as Defendant's financial condition could have relevance to damages. But by its nature, injunctive relief requires a showing of irreparable harm, and Plaintiff has not established that expedited discovery into Defendant's finances is reasonable and necessary at this time. I therefore deny the Motion with respect to Request Nos. 5 and 14.

### D. Discovery Concerning the Google Advertising Campaign

At the Discovery Conference, the parties suggested that they reached agreement about discovery concerning the Google advertising campaign Defendant allegedly utilized for the nolabels.com domain. (1/25/24 Tr. at 137:2-8.) Upon questioning from the Special Master at the Discovery Conference, it appeared that the parties may not agree about whether they have reached agreement or the terms of any such agreement. (*Id.*) This is not the first time the parties had differing views about the existence or scope of an alleged agreement. (12/15/23 Tr. at 65:11-13, 66:22-67:7; *see also* D.I. 26 ¶ 5.) As a consequence, the Special Master directed

10

Defendant to identify the categories of documents it would produce in response to Request No. 14. Following that identification, the Special Master directed the Plaintiff to confirm whether Defendant's proffered production resolved the parties' dispute. If, after these exchanges and any meet and confer thereon, a dispute remains, the Special Master will resolve it promptly.

NOW THEREFORE, IT IS HEREBY ORDERED THAT

1) Plaintiff's Motion to compel is GRANTED in part and DENIED in part as follows:

    a. The Motion is GRANTED and Defendant is hereby ORDERED to produce, without redactions, documents responsive to Request Nos. 1, 2, 8, 11, and 12, however, Defendant need not produce donor, volunteer, or member lists to the extent such documents are responsive to Plaintiff's discovery requests.

    b. The Motion is GRANTED and Defendant is hereby ORDERED to produce discovery concerning the acquisition, development, and/or launch of the nolabels.com domain and the content of information placed on the website hosted thereon responsive to Request Nos. 1, 2, 9, 16, and 17. To the extent these requests seek information beyond these topics, for example in Request Nos. 9 and 17, the Motion is DENIED.

    c. The Motion is DENIED and Defendant need not produce documents responsive to Request Nos. 5 and 14, other than to the extent such requests pertain to the acquisition of the nolabels.com domain or the Google advertising campaign.

    d. The Motion is DENIED AS MOOT with respect to Request Nos. 4 and 8, which Defendant agreed to produce.

  e. The Motion is DENIED AS MOOT with respect to Request No. 10, which Plaintiff agreed to withdraw.

  f. The Motion is DENIED AS MOOT with respect to Plaintiff's request to compel the production of a privilege log.

  g. The Motion is DENIED AS MOOT with respect to Plaintiff's request to compel a response to the Counsel Subpoenas, without prejudice to resubmit this dispute to the Special Master if the parties cannot resolve their dispute.

  h. The Motion is DENIED AS MOOT with respect to Request No. 14 as it relates to discovery concerning the Google ad campaign, without prejudice to resubmit this dispute to the Special Master if the parties cannot resolve their dispute.

2) Plaintiff is hereby ORDERED to identify the scope of documents it will agree to produce concerning the Google ad campaign in response to Request No. 14 by e-mail to Plaintiff, with a copy to the Special Master, on or before 6:00 p.m. on January 26, 2024. On or before January 27, 2024 at 6:00 p.m., Defendant is hereby ORDERED to advise whether Defendant's proffered production resolves the parties' dispute.

Dated: January 26, 2024

                _____
                Stephen B. Brauerman (#4952)
                Special Master