# EXHIBIT A



Theodore A. Kittila<br>
Halloran Farkas + Kittila LLP<br>
5801 Kennett Pike, Suite C/D<br>
Wilmington, Delaware 19807<br>
Phone: (302) 257-2025<br>
Email: tk@hfk.law

January 19, 2024

**By Email**

Special Master Stephen B. Brauerman
Bayard, P.A.
600 N. King Street, Suite 400
P.O. Box 25130
Wilmington, Delaware  19899
Email:  sbrauerman@bayardlaw.com

Re:  *No Labels v. NoLabels.com Inc.*, Case No. 1:23-cv-01384-GBW

Dear Special Master Brauerman:

Plaintiff No Labels ("Plaintiff" of "No Labels") submits this letter brief in support of its motion to compel various categories of documents based on Defendant NoLabels.com Inc.'s ("Defendant's") objections.

The Court granted No Label's TRO within a few hours of argument and required that Defendant take down its infringing website and cease using the NO LABELS mark.  The Court then extended the TRO pending adjudication of the preliminary injunction after the February 22 evidentiary hearing ("PI Hearing").  While the Court granted the parties leave to conduct expedited discovery in connection with the PI Hearing *provided it was relevant to the claims and defenses asserted in the action*, Defendant has refused to produce responsive documents and provide testimony that is critical to No Labels' case and the PI Hearing.

Founded in 2009, No Labels is a non-profit corporation that promotes centrism and bipartisan solutions to problems, appealing to what No Labels calls the "commonsense majority."  While this case should be a garden-variety trademark dispute, because No Labels is perceived as a political threat by the country's two dominant political parties, the Defendant—which has gone to great lengths to conceal the individuals and/entities behind it—is seemingly using this litigation as a means to access and disseminate non-public information about No Labels while doing everything it possibly can to shield its own.  Indeed, the true motive behind Defendant's dogged and well-funded defense of its obvious trademark infringement was revealed in two provisions tucked into its draft protective order ("PO"), seeking:  (1) the ability to share No Labels' documents with Defendant's *unidentified* "counsel" (as opposed to counsel of record in the action); and (2) the ability to provide No Labels' information "to law enforcement and regulatory agencies."  Thus, despite the Court's admonition that expedited discovery must be relevant to the claims and defenses in the action, the evidence suggests Defendant has a different and improper agenda.

January 19, 2024
Page 2

Indeed, while No Labels is trying to discover evidence in support of its trademark claims, Defendant is hunting for evidence in support of a political agenda.

Thanks to Defendant's efforts, No Labels does not even know who is subject to the TRO (or who would be subject to the PI, if granted) because Defendant is concealing the identity of the individuals/entities involved in the infringement.  Moreover, No Labels seeks information concerning Defendant's intent in adopting the mark (a key *Lapp* factor),[1] which can only be gleaned from human beings (decision-makers) and their documents.  No Labels also seeks information concerning the identity of individuals because it is well established that the corporate structure will not shield individuals from personal liability for trademark infringement if they play an active role in the infringement.  Moreover, those who encouraged/funded Defendant's infringing conduct may be liable for contributory infringement if they were aware of No Labels' rights.

As it did at the TRO hearing, Defendant is attempting to insulate its conduct—and, now that its conduct has been deemed likely unlawful, to insulate its decision-makers and infringement partners—from scrutiny by invoking the First Amendment.  To be clear, No Labels has no desire to intrude on anyone's legitimate First Amendment right to support a particular non-profit corporation—even one deceptively named after a prior-existing and far-better-known entity.  In any event, as detailed below, to expedite this process, and reserving all rights to seek additional information in the future, No Labels is willing to limit the individuals/entities whose identities it seeks to those who are either involved in the infringing conduct or who are undeniably relevant and important witnesses based on Defendant's highly redacted document production.

Without question, the First Amendment provides some protection against unwarranted intrusion into a person's beliefs or the organizations she supports.  However, as numerous courts have observed, "anonymity is not protected to the extent that it is used to mask the infringement of intellectual property rights, including trademark rights." *Everytown for Gun Safety Action Fund Inc. v. Defcad, Inc.*, 2021 U.S. Dist. LEXIS 218103 (S.D.N.Y. Nov. 9, 2021) (citing *Arista Records LLC v. Doe*, 604 F.3d 110, 118 (2d Cir. 2010).  As the Second Circuit wrote in *Arista*, "To the extent that anonymity is used to mask [IP] infringement or to facilitate such infringement by other persons, it is unprotected by the First Amendment."  Here, Defendant—*a corporate entity*—is misusing the First Amendment to conceal the identity of the *individuals* engaging in the infringing acts.

*Arista Records* recites the widely adopted five-part test for determining whether the First Amendment should preclude disclosure: (1) the concreteness of plaintiff's showing of a *prima facie* claim of actionable harm; (2) the specificity of the discovery request; (3) the absence of alternative means to obtain the subpoenaed information; (4) the need for the subpoenaed information to advance the claim; and (5) the objecting party's expectation of privacy.[2]

---

[1] *See, e.g.*, *Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 226 (3d Cir. 2005) ("analyzing the intent of the defendant in using the mark will allow the court to understand the defendant's reason for utilizing the mark in the manner that it did").

[2] This test has been applied by courts in the Third Circuit.  *See, e.g.*, *Patrick Collins, Inc. v. Doe*, 2012 U.S. Dist. LEXIS 204593, at *11 (E.D. Pa. Sept. 27, 2012).

January 19, 2024
Page 3

Here, all five factors favor No Labels. The Court has already ruled that No Labels is likely to succeed on its Lanham Act claims. The requests are specific and narrow. Defendant is clearly the best source for obtaining information about the individuals/entities involved in its infringement. As indicated above, the information is needed to advance No Labels' Lanham Act claims. Finally, anyone who deliberately registers a domain that is identical to a prior entity's incontestable registered trademark and then designs and launches a website, hosted at the infringing domain on the publicly available internet, using imagery and language similar to the No Labels' site (including use of No Labels' "commonsense majority" tagline) to make the infringing website as misleading and disparaging as possible, has no reasonable expectation of privacy. *See Bloomberg, L.P. v. Doe*, 2013 U.S. Dist. LEXIS 130034, *9 (S.D.N.Y. June 26, 2013) ("Defendant is entitled only to a 'minimal expectation of privacy' in this case, where Plaintiffs have alleged what appear to be meritorious trademark infringement claims and must determine Defendant's identity in order to litigate those claims.").

The decisions on which Defendant relies[3] are inapposite because: (1) No Labels is not (at this time) seeking the identity of Defendant's "members"; and (2) in those decisions, there was little if any compelling interest to support the disclosure. For example, in *The Black Panthers*, the Court of Appeals clarified that information protecting anonymous speech under the First Amendment should only face mandatory disclosure if it "goes to the heart of the matter … [and] is crucial to the party's case." *Id.* at 1268. The *Husted* court noted that the otherwise privileged information sought must be "highly relevant to the claims or defenses…." 2015 U.S. Dist. LEXIS 153279, at *4. And in *Americans for Prosperity*, the Supreme Court concluded that a California law requiring charities to disclose the names and addresses of donors was invalid because the law was not narrowly tailored to its stated goal. 141 S.Ct. at 2389. None of Defendant's cases addresses disclosure of the identity of individuals *engaging in IP infringement*. In *Arista*, the Second Circuit acknowledged the importance of anonymous speech, but ruled that infringers cannot use the First Amendment to hide their identities or prevent a rights holder from pursuing a valid claim.

As indicated, in the interest of expediency, No Labels is willing to limit its present motion to documents and testimony concerning the identity of the individuals/entities who participated in the infringing conduct. This includes the individuals/entities involved in the: (1) conception of the plan to form an entity called NoLabels.com Inc., register the nolabels.com domain, and launch a website at that domain; (2) actual registration and/or transfer of the nolabels.com domain, including payment; (3) design and development of the infringing website, including its content, and the decision to copy aspects of No Labels' website; (4) solicitation of funds through the infringing website and where those funds went; (5) communication with any individuals who appeared to have been confused about the Defendant's connection to No Labels; and (6) those who are funding Defendant and/or otherwise directing or supporting its infringing activity.

At this time, No Labels is not seeking the identities of individuals who merely clicked on the "join us" button on Defendant's infringing website. While their testimony is undoubtedly

---

[3] Defendant relies on *The Black Panthers Party v. Smith*, 661 F.2d 1243 (D.C. Cir. 1981); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010); *Americans for Prosperity Foundation v. Bonta*, 594 U.S. ---, 141 S.Ct. 2373 (2021); and *Ohio Organizing Collaborative v. Husted*, 2015 U.S. Dist. LEXIS 153279 (S.D. Ohio Nov. 12, 2015).

relevant (*e.g.*, did any of them mistakenly believe the website was affiliated with No Labels), No Labels will agree to "fight that fight" another day.

In addition to the foregoing, there are entire categories of relevant documents/testimony that Defendant has failed and/or refused to produce, specifically:

- Defendant has produced no documents concerning the development and launch of the website (including the individual and entities involved).  Someone designed that website, someone drafted the website copy, and presumably someone was paid for services.  These materials are relevant to infringement (intentional copying), personal liability, contributory infringement, and Defendant's defense of non-commercial use.

- Defendant has produced no communications with American Patriot Project or Dan.com concerning the availability of the domain.  Defendant admits these organizations were involved in securing the infringing domain.  To the extent that Defendant has produced communications with Dan.com concerning transfer of the domain after it was purchased, Defendant has redacted the individual to whom such communications were addressed.  These materials are relevant to the identity of the infringer, personal liability, infringement (registering the infringing domain is an infringing act), contributory infringement, and commercial use.

- Defendant has produced only one corporate formation document.  That document references bylaws, which have not been produced.  These materials are undeniably relevant to Defendant's intent, the identity of the infringers, and commercial use.

- Defendant has failed to produce any documents concerning the Google Ad campaign it ran to support the infringing website, which campaign is referenced in the Complaint.  Someone ordered this campaign, determined the applicable criteria and budget (including what keywords were bid on, etc.), and the geographies to be targeted, and someone paid for it.  Where are the analytics about the success of the campaign, which undoubtedly used the NO LABELS mark?  These materials are relevant to infringement, contributory infringement, the identity of the infringers, and commercial use.

- Though Defendant advised that it is withholding responsive documents on the basis of privilege and agreed to produce a privilege log (and its production has gaps as a result), it has failed to confirm when that log will be produced.  Given its importance, No Labels requests that Special Master order Defendant to immediately produce a privilege log for the withheld documents.  No Labels is not withholding any documents relevant and necessary for the PI Hearing on the basis of privilege.

Defendant's production included two emails that, while heavily redacted, are undeniably highly relevant.  In one, the sender (whose name is redacted) states, "I support your program, but I am simply not able to make a contribution each month.  I did now [*sic*] know I was signing up for a recurring withdrawal.  Please cancel my monthly contribution and confirm."  This document is clearly relevant to Defendant's commercial use, irreparable harm, and seemingly contradicts the claim that Defendant does not solicit donations.  *See* Ex. 1 hereto (NoLabels.com 000044) (marked CONFIDENTIAL).

January 19, 2024
Page 5

In the second email, the sender (whose name is redacted) asks, "How can I help Nolabels and President Trump?" This document is undeniably relevant to confusion and irreparable harm. *See* Ex. 2 hereto (NoLabels.com 000052) (marked CONFIDENTIAL).

Finally, Defendant refuses to produce documents requested by subpoenas duly served on counsel of record's firms (Billion Law and Ballard Spahr LLP). No Labels served these subpoenas because, as described *supra*, Defendant has essentially refused to identify any of the individuals/entities involved in the infringement. The subpoenas are very narrow: they seek only a copy of the engagement letter(s) (redacted to remove hourly rates) and the identity of the client and/or anyone who is expected to pay the legal fees. For all the reasons cited herein, this information is central to No Labels' claims. Under Delaware law, "[c]ommunications regarding fee arrangements are typically discoverable because fee arrangements are considered incidental to the attorney-client relationship and do not usually involve the disclosure of confidential communications arising in the context of the professional relationship." *Grunstein v. Silva*, 2010 WL 1531618, at *2 (Del. Ch. Apr. 13, 2010). Moreover, as Judge Connolly has made clear, efforts to conceal the identity of litigants *and third-party litigation funders* through shell companies and offshore accounts, which can allow the real parties in interest to escape litigation accountability, are not well received in this district. *See* Standing Order Regarding Third-Party Litigation Funding Arrangements (Connolly, J.) (April 18, 2022). The same logic applies here. If the person(s) directing Defendant's infringement is concealing his identity, that information is discoverable.

No Labels respectfully requests that the Special Master order Defendant to produce all of the documents referenced herein and to provide testimony on those topics during depositions.

Respectfully submitted,

*/s/ Theodore A. Kittila* (DE Bar No. 3963)

Theodore A. Kittila, Attorney at Law
Halloran Farkas + Kittila LLP

*Counsel for Plaintiff*

cc:   Elizabeth S. Fenton, Esq. (fentone@ballardspahr.com)
      Mark M. Billion, Esq. (mbillion@billionlawgroup.com)
      William E. Green, Esq. (wg@hfk.law)
      Bradley J. Schlozman, Esq. (bschlozman@hinklaw.com)
      Jason C. Kravitz, Esq. (jkravitz@nixonpeabody.com)
      Mark D. Lytle, Esq. (mlytle@nixonpeabody.com)
      Leslie E. Hartford, Esq. (lhartford@nixonpeabody.com)

# EXHIBIT 1



No Labels <contact@nolabels.com>

## Cancellation
1 message

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■                                    Tue, Nov 21, 2023 at 5:16 AM
To: Contact@nolabels.com

I support your program, but I am simply not able to make a contribution each month. I did now know I was signing up for a recurring withdrawal. Please cancel my monthly contribution and confirm.

Thank you,
■■■■■■■■■■■■■■■

# EXHIBIT 2



No Labels <contact@nolabels.com>

## Volunteering
2 messages

     Mon, Nov 27, 2023 at 1:34 PM
To: "contact@nolabels.com" <contact@nolabels.com>

Hi-

How can I help Nolabels and President Trump?

Thanks,

    Wed, Dec 6, 2023 at 9:12 AM
To: "contact@nolabels.com" <contact@nolabels.com>

Hi! Resending this and hoping to join No Labels!

[Quoted text hidden]