# EXHIBIT B



Theodore A. Kittila
Halloran Farkas + Kittila LLP
5801 Kennett Pike, Suite C/D
Wilmington, Delaware 19807
Phone: (302) 257-2025
Email: tk@hfk.law

January 28, 2024

**By Email**

Special Master Stephen B. Brauerman
Bayard, P.A.
600 N. King Street, Suite 400
P.O. Box 25130
Wilmington, Delaware 19899
Email: sbrauerman@bayardlaw.com

Re: *No Labels v. NoLabels.com Inc.*, Case No. 1:23-cv-01384-GBW

Dear Special Master Brauerman:

Given the Special Master's familiarity with the case—including both the underlying claims and the parties' substantive positions—Plaintiff will not waste your time refuting Defendant's grandstanding concerning "political speech" and alleged silencing of everyday Americans. Rather, Plaintiff will focus on the discovery issues at stake, namely, the narrow categories of information relevant to trademark infringement to which Defendant is entitled for purposes of expedited discovery needed in connection with the February 22 evidentiary hearing on No Labels' motion for preliminary injunction (the "PI Hearing").

Defendant lists seven broad categories of Disputed Discovery Requests to which it claims that Plaintiff and/or the State Affiliates[1] refused to respond. As noted further below, some of these categories—including licensing of the Mark to other users and harm arising from Defendant's infringement—are improperly included, as Plaintiff has either already produced evidence related to that category or has agreed to provide deposition testimony on that topic. Others are simply so

---

[1] As an initial matter, Defendant's motion fails to acknowledge that the State Affiliates are third parties and Defendant has a particular obligation to limit the burden on such parties. *See, e.g., Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 218 F.R.D. 423, 424 (D. Del. 2003) ("It is incumbent upon counsel in the first instance to order discovery demands, particularly against non-parties, in such a way that the burdens of giving evidence are reasonable, under all of the circumstances presented."). Furthermore, Plaintiff has indicated its representation of the State Affiliates for the purposes of their depositions—and indeed has provided dates for those depositions, to which the designees may bring any responsive documents. It is unclear upon what basis Defendant is asserting that the State Affiliates have refused to produce documents.

January 28, 2024
Page 2

unrelated to the claims and defenses at hand that there is no basis to compel discovery on those topics at all, let alone for the PI Hearing.[2]

**Relevance of the Information Sought**

It is interesting that Defendant begins its argument by noting the main criteria on which the parties' claims turn, particularly because the majority of the evidence that Defendant highlights—including commercial use, bad faith, confusion, and damages—will be proven largely (if not entirely) by materials produced *by Defendant*. Plaintiff will not belabor Defendant's prior unwillingness to produce much of this very information in light of the Special Master's ruling on January 26. Further, Plaintiff does not dispute that documents related to Plaintiff's control over the Mark, including the terms under which a third party may use it, are relevant—which is why Plaintiff has *already produced* that material.

> A. *Plaintiff has already responded appropriately to requests relating to Plaintiff's control over the Mark.*

Plaintiff has produced information concerning its control over the mark, including all existing bylaws for the State Affiliates.[3] Furthermore, both Plaintiff and the State Affiliates have agreed to provide testimony on this topic. *See, e.g.*, Defendant's Ex. B, Plaintiff's Responses to Topic Nos. 1, 2, 4, 17; Ex. C, No Labels Party of Arizona's Responses to Topic Nos. 1, 2, 4, 11, 13, 17; Ex. D, No Labels Party of North Carolina's Responses to Topic Nos. 1, 2, 4, 11, 13, 17; Ex. E, No Labels Party of Florida's Responses to Topic Nos. 1, 2, 4, 11, 13,18. Given that Plaintiff has not objected to producing this information and that no deposition has been taken yet, Defendant's objections to this topic are puzzling.

Defendant's attempt to contort the issue of Plaintiff's "control" of the Mark, however, to justify document requests concerning candidates, the Problem Solvers Convention, and former President Trump demonstrate both a misguided interpretation of trademark law (stretching it beyond recognition to suit Defendant's ulterior and improper motive) and an unwillingness to recognize the mission and scope of Plaintiff's organization.

First, in terms of candidates, No Labels explicitly has not thrown its support behind a candidate to "speak under the mark" and does not intend to fund or run a campaign for any candidate. Indeed, the only candidates at issue in this litigation are those whom Defendant deceptively posted on its Infringing Website, in the face of No Labels' clear policy to the contrary.[4]

---

[2] The Special Master will recall that the Court instructed the parties to "mak[e] sure that your scope of your discovery is tied to the claims in this action and necessary in terms of being expedited." TRO Hearing Transcript 67:4-7.

[3] Plaintiff directs Defendant to produced documents NL0000043–NL0000261. Not all of the State Affiliates have bylaws, which could have been ascertained had Defendant's counsel conferred with Plaintiff's counsel about the matter. Thus, Defendant's assertion in fn. 10 that Plaintiff is withholding "approximately half" of the bylaws is simply not factual.

[4] *See* https://www.nolabels.org/unity-ticket-faqs ("No Labels has never endorsed or supported Donald Trump or any other candidate for president;" "If No Labels does end up offering our ballot line to an independent Unity ticket, our organization will not help fund or run the campaign.").

January 28, 2024
Page 3

Additionally, the 2015 Problem Solvers Convention—as is made clear on Plaintiff's website—was created and hosted by No Labels and invited candidates from both main political parties.[5] No part of the invitation constituted *support* of any politician, nor was it an invitation to "speak on behalf of the movement." Again, only Defendant's Infringing Website supports this clearly false narrative—that No Labels has endorsed or supported certain candidates—which, in addition to being untrue, is utterly unrelated to the trademark claims and defenses at hand. Attempting to force Plaintiff to produce documents concerning relationships or control over candidates with which it is not engaged is nonsensical.[6]

Finally, Defendant's tortured conclusions concerning signature collections should not be countenanced. Voters are not engaging in commercial use by providing their signature and thus do not need to be told anything about the No Labels entity's legal status or its Mark. This is simply Defendant fishing for information it hopes to use in another proceeding rather than information relevant to the instant trademark dispute and the upcoming PI Hearing.

  B. *Plaintiff has already produced evidence of harm, which is supported by the Court's issuance of the TRO.*

Defendant's conclusory statement that Plaintiff has produced no evidence of harm to date is baffling, given both the confusion *already identified* at the time of the TRO and the Court's finding that Plaintiff "will *continue to suffer* irreparable harm in the absence of immediate relief." D.I. 26. Furthermore, as discussed in last week's hearing with the Special Master, Defendant appears to have produced additional textbook evidence of source confusion,[7] which tarnishes Plaintiff's brand, harms Plaintiff's goodwill, and weakens the strong association between the Mark and Plaintiff. Indeed, it is likely that Defendant—not Plaintiff—has further evidence of harm, including any donations mistakenly made to Defendant but intended for Plaintiff.[8] Finally, Defendant's demand that the Plaintiff be compelled to provide testimony on this topic is redundant

---

[5] *Id.* ("When No Labels hosted our Problem Solvers Convention in New Hampshire in 2015, we invited all the candidates on both sides. Eight of them, including Trump, accepted. Any suggestion that we endorsed anyone is nonsense.").

[6] Even if such documents were relevant—which they are not—Defendant cannot possibly claim that its requests are narrowly tailored to the specific relationships or control that Defendant alleges exists. For example, Defendant's Request No. 12 demands "All documents pertaining to Donald Trump, his campaign staff, his campaign donors, or any other agents," a massive overreach.

[7] *See, e.g.*, Exhibits 1 and 2 to Plaintiff's Motion to Compel, NL000044 and NL000052.

[8] Defendant's refusal to acknowledge the evidence of harm is disingenuous. Defendant's own production shows there is an individual who likely agreed to make a donation to No Labels and who is seeking to cancel the recurring nature of that donation but, because Defendant is so concerned about protecting the anonymity of that person (who contacted Defendant by mistake), Defendant is concealing that person's identity—which means No Labels cannot cancel his recurring donation. How does Defendant suppose that person feels about No Labels after he/she continues to see a charge on his/her credit card statement each month? This is harm Defendant is now willfully perpetuating.

January 28, 2024
Page 4

in the face of Plaintiff's *written response that it will do so*. See Defendant's Ex. B, Response No. 15.[9]

Additionally, there is no basis—and Defendant cites no authority—for the idea that the *State Affiliates*, non-parties to this action, are obligated to produce evidence of harm *to Plaintiff*.

C. *Plaintiff's legal corporate status is irrelevant to the trademark claims at hand.*

Defendant's argument concerning incontestability and Plaintiff's alleged use of the Mark outside of the registered goods and services is an attempt to muddy the waters to obscure its own infringement. Plaintiff has alleged that Defendant is infringing the Mark by using it *at least* within the scope of Plaintiff's registered use. Defendant may not defend against that infringement by alleging that Plaintiff is *also* using the mark in other ways—which it is not. If No Labels were selling electric vehicles under the mark NO LABELS, that would have no impact on the validity of its incontestable registration. Plaintiff's registered use and 501(c)(4) election are aligned; suggestions that Plaintiff has strayed beyond its permitted organizational role are poorly disguised potshots at Plaintiff itself, not its use of the Mark. Here, again, Defendant's argument reveals its ulterior and improper motive for discovery—to hunt for information that it can use to attack No Labels in an unrelated proceeding.

**Defendant has not demonstrated relevance of information to which Plaintiff has objected**

For all of the reasons noted above, Defendant has failed to demonstrate the relevance (both substantively and in connection to the PI Hearing) of categories of information to which Plaintiff has objected, including information concerning former President Trump, the Problem Solvers Convention, and its legal entity status. Moreover, producing that volume of information[10] is simply not "proportional to the to the needs of the case, [particularly] considering … whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b). Furthermore, Defendant's motion repeatedly demands that the Special Master compel production of information and/or testimony which Plaintiff has already agreed to produce or provide.

No Labels respectfully requests that the Special Master deny Defendant's motion in its entirety.

Respectfully submitted,

*/s/ Theodore A. Kittila* (DE Bar No. 3963)

Theodore A. Kittila, Attorney at Law
Halloran Farkas + Kittila LLP

*Counsel for Plaintiff*

---

[9] Defendant's "correlation" of specific Disputed Discovery Requests related to harm in Exhibit F is similarly baffling. Of the thirteen RFPs relating to harm to which Defendant alleges that Plaintiff refused to respond, Plaintiff has already agreed to produce documents responsive to **nine** of them. The remaining four relate to Plaintiff's use of the Mark and corresponding revenue, which is neither related to harm nor relevant to the claims at issue for the PI Hearing. *See* Defendant's Ex. F.

[10] One can only imagine how many emails were sent and received concerning the 2015 Problem Solvers Caucus, including emails about catering, flight and hotel reservations, guest lists, etc.

January 28, 2024
Page 5

cc:  Elizabeth S. Fenton, Esq. (fentone@ballardspahr.com)
Mark M. Billion, Esq. (mbillion@billionlawgroup.com)
William E. Green, Esq. (wg@hfk.law)
Bradley J. Schlozman, Esq. (bschlozman@hinklaw.com)
Jason C. Kravitz, Esq. (jkravitz@nixonpeabody.com)
Mark D. Lytle, Esq. (mlytle@nixonpeabody.com)
Leslie E. Hartford, Esq. (lhartford@nixonpeabody.com)