**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| NO LABELS,<br><br>    Plaintiff,<br><br>      v.<br><br>DELCO0222024, INC., AMERICAN<br>PATRIOT PROJECT, INC., RT GROUP LLC,<br>JOSHUA SILVER, CHARLES SILER,<br>and LUCY CALDWELL,<br><br>    Defendants. | C.A. No. 23-1384-GBW |

<u>**DEFENDANT JOSHUA SILVER'S MOTION TO DISMISS FOR LACK OF PERSONAL
JURISDICTION**</u>

Elizabeth S. Fenton (Bar No. 5563)
**BARNES & THORNBURG LLP**
222 Delaware Avenue, Suite 1200
Wilmington, DE 19801-1058
Telephone: (302) 267-1515
Facsimile: (302) 300-3456
Email: efenton@btlaw.com

Daniel J. Blinka*
Xavier O. Jenkins*
**GODFREY & KAHN, S.C.**
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202-5615
Phone:  414-273-3500
Fax:  414-273-5198
dblinka@gklaw.com
xjenkins@gklaw.com
*Pro Hac Vice* Applications Forthcoming

*Counsel for Joshua Silver*

Dated:  May 16, 2025

1

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................... 6

FACTUAL BACKGROUND ............................................................................................... 7

LEGAL STANDARD ......................................................................................................... 9

ARGUMENT ...................................................................................................................... 10

    I.  This Court Does Not Have Personal Jurisdiction Over Silver. ....................................... 10

        a.  Silver is not subject to general personal jurisdiction in Delaware because he is a Massachusetts resident, and Plaintiff has not alleged any continuous or systematic contacts. ............................................................................................... 10

        b.  Silver is not subject to specific personal jurisdiction because his alleged conduct falls outside Delaware's long-arm statute and due process limits. ............... 11

    II.  Plaintiff's Conspiracy Theory of Jurisdiction Also Fails. ............................................ 15

        a.  *Istituto Bancario* Factors 1 and 2: Plaintiff fails to allege a legally cognizable conspiracy. ......................................................................................... 16

        b.  *Istituto Bancario* Factor 3: The incorporation of NoLabels.com Inc was not a "substantial act" capable of conferring conspiracy jurisdiction. ............................... 18

        c.  *Istituto Bancario* Factors 4 and 5: The incorporation of NoLabels.com Inc was not a "substantial act" capable of conferring conspiracy jurisdiction. ........................ 20

CONCLUSION ................................................................................................................... 21

# TABLE OF AUTHORITIES

Page(s)

Cases

*Abajian v. Kennedy*,
  No. Civ. A. 11425, 1992 WL 8794 (Del. Ch. Jan. 17, 1992) .................................................. 14

*Adtile Technologies Inc. v. Perion Network Ltd.*,
  192 F. Supp. 3d 515 (D. Del. 2016) ............................................................ 12

*Amaysing Technologies Corp. v. CyberAir Commc'ns, Inc.*,
  No. Civ. A., 19890-NC, 2005 WL 578972 (Del. Ch. Mar. 3, 2005) ....................................... 17

*Anschutz Corp. v. Brown Robin Cap., LLC*,
  No. Civ. A. 2019-0710-JRS, 2020 WL 3096744 (Del. Ch. June 11, 2020) ............................. 17

*Applied Biosystems, Inc. v. Cruachem, Ltd.*,
  772 F. Supp. 1458 (D. Del. 1991) ....................................................... 13, 14

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ............................................................. 11

*Cf. L'Athene, Inc. v. EarthSpring, LLC*,
  570 F. Supp. 2d 588 (D. Del. 2008) ........................................................ 12

*Chow v. Canyon Bridge Cap. Partners, LLC*,
  No. 22-CV-00947-JLH-SRF, 2024 WL 3510917 (D. Del. July 22, 2024) ............................. 15

*Curam, LLC v. Gray*,
  No. N23C-12-206, 2025 WL 733256 (Del. Super. Ct. Mar. 6, 2025) .................................. 10, 16

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ............................................................. 11

*Dan Dee Int'l, LLC v. Glob. New Ventures Grp. LC*,
  No. 23-CV-01274-GBW, 2024 WL 3043430 (D. Del. June 18, 2024) .................................. 18

*Desktop Technologies, Inc. v. Colorworks Reproduction & Design, Inc.*,
  No. Civ. A., 98–5029, 1999 WL 98572 (E.D. Pa. Feb. 25, 1999) .......................................... 13

*Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA*,
  623 F.3d 147 (3d Cir. 2010) ....................................................... 14

*Fortis Advisors LLC v. Johnson & Johnson*
  No. Civ. A. 2020-0881-LWW, 2021 WL 5893997 (Del. Ch. Dec. 13, 2021) ..................... 17, 18

*Funai Elec. Co. v. Personalized Media Commc'ns, LLC*,
    No. 15-CV-00558-RGA, 2016 WL 370708 (D. Del. Jan. 29, 2016) ...................................... 10

*Genuine Parts Co. v. Cepec*,
    137 A.3d 123 (Del. 2016) ........................................................................................................ 10

*Gibralt Cap. Corp. v. Smith*,
    No. 17422, 2001 WL 647837 (Del. Ch. May 9, 2001) ........................................................... 18

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011) .......................................................................................................... 10, 11

*Homesource, Corp. v. Retail Web Servs., LLC*,
    No. 18-CV-11970, 2020 WL 12188147 (D.N.J. Mar. 30, 2020) ............................................ 17

*In re Verestar, Inc.*,
    343 B.R. 444 (Bankr. S.D.N.Y. 2006) .................................................................................... 17

*Istituto Bancario Italiano SpA v. Hunter Eng'g Co.*,
    449 A.2d 210 (Del. 1982) ............................................................................................ 15, 16, 20

*Katz v. Apuzzo*,
    No. 17—CV-01328-MN, 2019 WL 3219513 (D. Del. July 17, 2019) ..................................... 10

*Kloth v. S. Christian Univ.*,
    494 F. Supp. 2d 273 (D. Del. 2007) ................................................................................... 12, 13

*Konstantino v. AngioScore, Inc.*,
    No. Civ. A. 9681-CB, 2015 WL 5770582 (Del. Ch. Oct. 2, 2015) ......................................... 20

*Matthew v. Fläkt Woods Grp. SA*,
    56 A.3d 1023 (Del. 2012) ........................................................................................................ 20

*Mktg. Prods. Mgmt., LLC v. HealthandBeautyDirect.com, Inc.*,
    No. 02C-04-256 CLS, 2004 WL 249581 (Del. Super. Ct. Jan. 28, 2004) ......................... 17, 19

*Myers v. Am. Dental Ass'n*,
    695 F.2d 716 (3d Cir. 1982) ................................................................................................... 10

*Puff Corp. v. KandyPens, Inc.*,
    No. 20-CV-00976-CFC, 2020 WL 6318708 (D. Del. Oct. 28, 2020) ...................................... 13

*Quantum Loyalty Sys., Inc. v. TPG Rewards, Inc.*,
    No. 09-CV-00022, 2009 WL 5184350 (D. Del. Dec. 23, 2009) ............................................. 14

*Republic Bus. Credit, LLC v. Metro Design USA, LLC*
   No. Civ. A. 15C-09-233 JRJ, 2016 WL 3640349 (Del. Super. Ct. June 29, 2016)............ 18, 19

*Schubert v. Lumileds LLC*,
   No. 12-CV-00924, 2020 WL 6888462 (D. Del. Nov. 24, 2020)...............................................11

*Sears, Roebuck & Co. v. Sears plc*,
   752 F. Supp. 1223 (D. Del. 1990) ........................................................................................ 13

*Tolliver v. Qlarant Quality Sols., Inc.*,
   No. K21C-06-040, 2022 WL 17097602 (Del. Super. Ct. Nov. 21, 2022) ............................... 14

*Turner v. Prince George's Cnty. Pub.*,
   *Schs.*, 694 F. App'x 64 (3d Cir. 2017) ...................................................................... 10

*Virtus Cap. L.P. v. Eastman Chem. Co.*
   No. Civ. A. 9808-VCL, 2015 WL 580553 (Del. Ch. Feb. 11, 2015) ........................................ 20

**Statutes**

10 Del. C. § 3104(c)(1) ........................................................................................................ 14

10 Del. C. § 3104(c)(2)......................................................................................................... 15

10 Del. C. § 3104(c)(3)......................................................................................................... 12

10 Del. C. § 3104(c)(4).........................................................................................................11

## INTRODUCTION

As to Joshua Silver, this case has nothing to do with Delaware. Plaintiff, a political organization based in Washington, D.C., asks this Court to assert personal jurisdiction over Silver—a Massachusetts resident with no relevant ties to Delaware. Silver has never lived, worked, or owned property in Delaware. He did not create or register the website that lies at the heart of this case, did not incorporate or control NoLabels.com Inc., the entity alleged to have owned and controlled the website, and is not alleged to have committed any act within Delaware's borders.

Lacking any Delaware-specific act, Plaintiff relies on two flawed theories to establish personal jurisdiction: first, that Silver's limited role in reviewing website content somehow constitutes tortious conduct directed at Delaware; and second, that his indirect association with Delaware-formed entities supports jurisdiction either under Delaware's long-arm statute or through a conspiracy theory. Both fail as a matter of law. Delaware courts have long recognized that a general informative website does not become Delaware-directed simply because it can be accessed from the state. Nor does simply having an affiliation with a Delaware entity subject a non-resident to jurisdiction. And while Plaintiff attempts to invoke conspiracy jurisdiction, its own allegations confirm that all the alleged co-conspirators were agents or affiliates of the same organizations, acting in those capacities, which precludes a finding of a conspiracy.

Because Plaintiff has not met its burden under Delaware's long-arm statute, and because exercising jurisdiction over Silver would violate due process requirements, the Court lacks jurisdiction over Silver, and the claims against him must be dismissed.

## FACTUAL BACKGROUND

The following facts are taken from the allegations in the Plaintiff's Amended Complaint (Dkt. 126, hereinafter "Am. Compl.") and in the supporting affidavits filed contemporaneously herewith.

### *Defendant Joshua Silver*

Plaintiff No Labels, a political organization based in Washington, D.C., brings this suit against Silver and other non-Delaware residents based on an alleged campaign to "destroy" its brand and "undermine its work" through the publication of an allegedly misleading website located at the domain www.nolabels.com (the "Domain").  (Am. Compl. ¶¶ 1-3, 31-33.)

Silver resides in Massachusetts and was the principal, sole member, and manager of RT Group LLC, a Delaware-formed entity with its principal place of business in Massachusetts. (Am. Compl. ¶¶ 8-9, 16, 45; Affidavit of Joshua Silver ("Silver Aff.") ¶ 8).) RT Group has never had any physical presence in Delaware and has never supplied goods or services in the state. (Silver Aff. ¶¶ 9-10.) The Amended Complaint does not allege that RT Group transacted business in Delaware or that Silver himself entered Delaware, directed any conduct into the state, or communicated with anyone located there. It alleges only that RT Group, not Silver, "owned" the Domain "for a period of time," until it was transferred to NoLabels.com, Inc. (Am. Compl. ¶ 53.)

Silver was also the principal and an agent of American Patriot Project, Inc. ("APP"), a now-dissolved nonprofit that was incorporated in D.C. (Am. Compl. ¶¶ 7, 16, 46; Silver Aff. ¶ 4-5.) Like RT Group, APP has never had a physical presence in Delaware and never conducted business there. (Silver Aff. ¶¶ 9-10.) Plaintiff alleges only that APP, not Silver, purchased the Domain, before transferring it to RT Group. (Am. Compl. ¶ 53.)

Nowhere does Plaintiff allege that Silver registered the Domain, created or hosted the website, or held any formal role in NoLabels.com Inc.—much less that those activities occurred

in Delaware. In fact, Silver has never resided in Delaware, owns no property in the state, and did not travel to Delaware between September 1, 2023 (before the Domain was acquired and the website created), and the filing of the original Complaint on December 4, 2023. (Silver Aff. ¶¶ 3, 11-12.) Plaintiff alleges only that Silver, through APP (a Washington D.C. entity), provided the funding used to acquire the Domain (Am. Compl. ¶¶ 52-53), and that Silver made "edits" to the website hosted on the Domain, which was created by another defendant, Charles Siler. (*Id.* ¶¶ 57, 105.)

### *The Domain and Website*

Because Plaintiff's claims rest entirely on Defendants' alleged involvement with the Domain and associated website, it is appropriate to set forth the relevant factual background concerning their creation and use.

On September 24, 2023, Defendant Charles Siler—an Arizona resident and then a political consultant with APP (Am. Compl. ¶ 47)—noted that the Domain was listed for sale and asked APP to purchase it. (Affidavit of Charles Siler ("Siler Aff.") ¶¶ 6-7.) APP, a Washington, D.C. entity, leased the Domain on September 24, 2023, and, on October 11, 2023, paid off the lease and took full ownership. (*Id.* ¶¶ 8-9.) That same week, APP transferred the Domain to RT Group. (*Id.* ¶ 10.) Just days later, RT Group transferred the Domain to Steven Solomon, a web developer located in Washington D.C. (*Id.* ¶ 11; Affidavit of Steven Solomon ("Solomon Aff.") ¶ 4, 8.) The Domain remained in Solomon's name until it was ultimately transferred to Plaintiff. (Solomon Aff. ¶ 10.)

Charles Siler planned to use the Domain to host a website that would highlight the undesirable candidates that Plaintiff's "movement" was attracting (the "Website"). (Siler Aff. ¶ 14.) On October 14, 2023, Mr. Siler drafted the Website's content. (*Id.* ¶ 15.) He then circulated it to Silver, and to Lucy Caldwell, an APP consultant (and also an Arizona resident), for comment.

(*Id.*; Affidavit of Lucy Caldwell ("Caldwell Aff." ¶ 3.) Silver and Caldwell both made "edits" to the website. (Am. Compl. ¶ 57.)

Charles Siler then supplied the content for the Website to Solomon. (Siler Aff. ¶ 16.) Solomon created the Website at Siler's request. (Solomon Aff. ¶ 6.) The website went live on November 16, 2023. (Siler Aff. ¶ 18.) The Website was hosted in Washington, D.C., and no part of the coding or hosting took place in Delaware. (Solomon Aff. ¶¶ 16-17.) It remained active for just 29 days, receiving only 35 inquiries. (Siler Aff. ¶ 23.)  Starting on November 29, 2023, Solomon purchased ads related to the keywords "no labels" on Google's AdWords platform. (Solomon Aff. ¶ 15.) The Website was not targeted to Delaware, and none of the ads Solomon purchased through AdWords were created using keywords relating to Delaware. (Solomon Aff. ¶ 18.)

### *NoLabels.com, Inc.*

Plaintiff alleges that NoLabels.com Inc. later purchased the Domain and operated the Website and was "formed for the purpose of usurping [Plaintiff]'s goodwill and tarnishing its reputation." (Am. Compl. ¶¶ 43, 58-59.) The entity was incorporated by Charles Siler on November 7, 2023. (Siler Aff. ¶ 20.)  Mr. Siler and one other individual, Michael McCauly, were the entity's sole officers. (*Id.* ¶ 21.) Silver and Caldwell never served as officers or directors of NoLabels.com Inc. (*Id.* ¶ 22.) NoLabels.com Inc has never had any physical presence within the state of Delaware and has not supplied any goods in Delaware. (*Id.* ¶ 25.) It did not engage in fundraising, emailing, mailing, or solicitation in Delaware. (*Id.* ¶ 29.)

### **LEGAL STANDARD**

Federal courts presume they lack jurisdiction unless the plaintiff affirmatively establishes it. *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982). When "a defendant challenges a

court's exercise of personal jurisdiction under Rule 12(b)(2)," the plaintiff bears the burden of showing, by a preponderance of the evidence, that the defendant has sufficient contacts with the forum state. *Katz v. Apuzzo*, No. 17—CV-01328-MN, 2019 WL 3219513, at *1 (D. Del. July 17, 2019) (quoting *Turner v. Prince George's Cnty. Pub. Schs.*, 694 F. App'x 64, 66 (3d Cir. 2017)). If the Court lacks jurisdiction, Rule 12(b)(2) requires that the case be dismissed. *Funai Elec. Co. v. Personalized Media Commc'ns, LLC*, No. 15-CV-00558-RGA, 2016 WL 370708, at *2 (D. Del. Jan. 29, 2016).

Where a defendant has challenged a court's personal jurisdiction, the Court's analysis proceeds in two steps. ***First***, the Court must "consider[] whether Delaware's Long Arm Statute is applicable." *Curam, LLC v. Gray*, No. N23C-12-206, 2025 WL 733256, at *4 (Del. Super. Ct. Mar. 6, 2025). ***Second***, and only if the Court finds that Delaware's long-arm statute *is* applicable, the Court must also consider whether applying the statute to the facts of this case comports with due process. *Id.*

## ARGUMENT

### I.  This Court Does Not Have Personal Jurisdiction Over Silver.

Under both Delaware law and the Due Process Clause, there are two kinds of personal jurisdiction: general and specific. *See Genuine Parts Co. v. Cepec*, 137 A.3d 123, 127 (Del. 2016); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Plaintiff cannot meet its burden to prove that personal jurisdiction exists in this Court under either theory.

#### a.  Silver is not subject to general personal jurisdiction in Delaware because he is a Massachusetts resident, and Plaintiff has not alleged any continuous or systematic contacts.

Plaintiff does not allege that Silver is subject to general personal jurisdiction in Delaware, nor could it plausibly do so. General jurisdiction under 10 Del. C. § 3104(c)(4) requires contacts so "continuous and systematic" that the defendant is essentially "at home" in the forum. *Schubert*

*v. Lumileds LLC*, No. 12-CV-00924, 2020 WL 6888462, at *3 (D. Del. Nov. 24, 2020) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). The only forum where general jurisdiction is appropriate for an individual defendant is the individual's domicile. *Daimler*, 571 U.S. 117 at 137 ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . .") (quoting *Goodyear*, 564 U.S. at 924).

Silver is a Massachusetts resident, and Plaintiff does not argue that his contacts with Delaware are so "continuous and systematic" such that Silver can be considered as being "essentially at home" in Delaware. *See Daimler*, 571 U.S. at 127. Consequently, Plaintiff bears the burden of establishing specific personal jurisdiction. It has failed to do so.

### b. Silver is not subject to specific personal jurisdiction because his alleged conduct falls outside Delaware's long-arm statute and due process limits.

Silver is not subject to specific personal jurisdiction in Delaware. Specific jurisdiction requires that the defendant purposefully directed conduct at Delaware, and that Plaintiff's claims arise out of that same conduct. *Schubert*, 2020 WL 6888462, at *3 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). None of the conduct alleged against Silver in this case was purposefully directed to Delaware or arise out of or relate to Delaware-directed acts.

Plaintiff's jurisdictional allegations fall well short of that standard. Plaintiff attempts to establish specific personal jurisdiction over Silver based on two categories of allegations: (1) his alleged role in developing and promoting an infringing website; and (2) his purported involvement with Delaware-incorporated entities. These distinct theories fail both independently and collectively under Delaware's long-arm statute and constitutional due process principles.

Plaintiff's claims center on Silver's alleged role in helping develop and edit a website that purportedly infringed on Plaintiff's trademark and included deceptive and misleading content. But none of the alleged tortious conduct occurred in Delaware or was directed to Delaware. *See* 10

11

Del. C. § 3104(c)(3) (conferring jurisdiction for tortious conduct that results in an "injury *in [Delaware]*" by "an act or omission *in [Delaware]*") (emphasis added). The Domain that hosted the Website was purchased by APP, a Washington, D.C. entity. The Website itself was created in Washington, D.C. by a web developer also located in Washington, D.C. Its contents were created by Charles Siler and allegedly edited by Silver and Caldwell—none of whom reside in Delaware. Critically, the Website was non-commercial. It did not sell products, solicit donations, or offer services. *See Kloth v. S. Christian Univ.*, 494 F. Supp. 2d 273, 280-81 (D. Del. 2007) (finding that website operated by university located in Alabama that contained only "general public information" and other educational information was not "sufficiently 'commercial'" to allow for specific jurisdiction). *Cf. L'Athene, Inc. v. EarthSpring, LLC*, 570 F. Supp. 2d 588, 593 (D. Del. 2008) (exercising specific jurisdiction where defendants "operated a website accessible in Delaware, received orders and payments from customers in Delaware and shipped their products to Delaware.").

Further, the Website did not target Delaware residents, contain Delaware-specific content, or result in known engagement by any Delaware users. And the actual engagement data confirms this lack of targeting: the Website generated only 35 inquiries—none from known Delaware residents. The associated AdWords campaign did not include Delaware-specific keywords or target Delaware. *Adtile Technologies Inc. v. Perion Network Ltd.*, 192 F. Supp. 3d 515, 522–23 (D. Del. 2016) ("For advertisements to grant personal jurisdiction under Delaware's long arm statute, 'they must be specifically directed toward Delaware residents.'") (quoting *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1467 (D. Del. 1991)). As this Court has explained, the fact that the Website itself was merely accessible in Delaware is not enough to

support the exercise of specific jurisdiction, even if Silver and the other Defendants knew that Delaware residents might access the website:

> Courts within the Third Circuit have traditionally required "something more" from defendants than the knowledge that their website could be viewed or that their product could be used in a forum state before considering whether specific jurisdiction is proper. *See Desktop Technologies, Inc. v. Colorworks Reproduction & Design, Inc.*, No. Civ. A. 98–5029, 1999 WL 98572, *5 (E.D. Pa. Feb. 25, 1999) **(ruling that registering someone else's trademark as a domain name and posting a website on the internet is not evidence that the website was directed to any particular forum state)**.

*Kloth*, 494 F. Supp. 2d at 279 (emphasis added).

Moreover, Plaintiff has not shown that any injury occurred in Delaware. Plaintiff itself is a Washington D.C. entity and has alleged no harm that occurred in Delaware. Nor does Plaintiff identify any instance in which a Delaware resident was confused or misled from the alleged infringement or deceptive trade practices. The law is clear that trademark infringement and deceptive trade practice claims arise where the harm—i.e., consumer confusion or reputational injury—actually occurs. *Sears, Roebuck & Co. v. Sears plc*, 752 F. Supp. 1223, 1228 (D. Del. 1990) ("[T]rade name or trademark infringement . . . [arises] where the confusion to the customer occurs."); *Puff Corp. v. KandyPens, Inc.*, No. 20-CV-00976-CFC, 2020 WL 6318708, at *3 (D. Del. Oct. 28, 2020) (Deceptive trade practices "arise where a customer is misled by the challenged conduct.").

Plaintiff's fallback theory, that Silver's affiliation with Delaware-formed entities supports jurisdiction over him as an individual, fares no better. The Complaint alleges that Silver served as a manager of RT Group, a Delaware-formed LLC; acted as an agent of NoLabels.com Inc., a Delaware corporation; directed services to be used by NoLabels.com Inc. in connection with the website; and helped cause the NoLabels.com Inc.'s incorporation. (Am. Compl. ¶ 16.) These allegations, at most, show a formal association with Delaware entities. But mere association with

a Delaware entity does not confer jurisdiction on an individual defendant. *Quantum Loyalty Sys., Inc. v. TPG Rewards, Inc.*, No. 09-CV-00022, 2009 WL 5184350, at *7 (D. Del. Dec. 23, 2009) ("[A]n agency relationship, alone, will not suffice" to confer personal jurisdiction."); *Tolliver v. Qlarant Quality Sols., Inc.*, No. K21C-06-040, 2022 WL 17097602, at *7 (Del. Super. Ct. Nov. 21, 2022) ("Simply holding a position in a company that operates in Delaware is insufficient to establish jurisdiction under" Section 3104(c)(1) of Delaware's long-arm statute); *Abajian v. Kennedy*, No. Civ. A. 11425, 1992 WL 8794, at *10 (Del. Ch. Jan. 17, 1992) ("It is well established law that merely contracting with an entity that is incorporated within a forum state does not provide necessary connections between the contract and the forum to support a finding of jurisdiction.").

Plaintiff has not demonstrated that Silver himself transacted business or supplied services in Delaware, as required under 10 Del. C. § 3104(c)(1) and (c)(2). Courts have emphasized that jurisdiction cannot be premised solely on the fact of a Delaware incorporation. Instead, the defendant must have taken some action within the state or purposefully directed activity toward it. *See Applied Biosystems, Inc. v. Cruachem*, Ltd., 772 F. Supp. 1458, 1466 (D. Del. 1991) (explaining that jurisdiction under § 3104(c)(1) for anyone that "[t]ransacts any business or performs any character of work" in Delaware, "requires that some act must have actually occurred in Delaware"). *See also Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010) (§ 3104(c)(2) requires some act in Delaware). The Amended Complaint contains zero allegations that Silver conducted any business in Delaware, or otherwise purposefully engaged with the state in a way that would support jurisdiction. Indeed, Silver spent no time in Delaware between the time the alleged conspiracy began and the date the original Complaint in this case was filed and performed no work in the state. His alleged involvement in

14

planning or coordinating incorporation efforts—none of which took place in Delaware—is not enough and does not comport with due process.

## II.    Plaintiff's Conspiracy Theory of Jurisdiction Also Fails.

Unable to establish personal jurisdiction over Silver based on his own alleged acts, Plaintiff advances an alternative conspiracy theory of jurisdiction, alleging that personal jurisdiction exists over Silver because he "participat[ed] in the conspiracy to spread false and misleading information about No Labels." (Am. Compl. ¶ 19.) That theory also fails.

Under the "conspiracy theory of jurisdiction . . . the presence of personal jurisdiction over one conspirator who committed an improper act in Delaware or caused injury in the forum may result in the court's exercise of personal jurisdiction over co-conspirators who would not otherwise be subject to jurisdiction in Delaware." *Chow v. Canyon Bridge Cap. Partners, LLC*, No. 22-CV-00947-JLH-SRF, 2024 WL 3510917, at *13 (D. Del. July 22, 2024). Conspiracy jurisdiction only applies where each of five elements are met: (1) a conspiracy to defraud existed; (2) the defendant was a member of the conspiracy; (3) a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state; (4) the defendant knew or should have known about the act in the forum state or that acts outside the forum state would have an effect in the forum state; and (5) the act in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy. *Istituto Bancario Italiano SpA v. Hunter Eng'g Co.*, 449 A.2d 210, 225 (Del. 1982). Because "the conspiracy theory of jurisdiction is narrowly and strictly construed," Plaintiff must establish *each* of the five elements, otherwise dismissal is warranted. *Curam, LLC*, , 2025 WL 733256, at *7 (quoting *Istituto Bancario Italiano SpA*, 449 A.2d at 225).

a. *Istituto Bancario* **Factors 1 and 2: Plaintiff fails to allege a legally cognizable conspiracy.**

Plaintiff's failure to establish the most basic elements of its conspiracy theory of jurisdiction—a conspiracy—is by itself fatal to the theory. The doctrine of conspiracy jurisdiction requires, at minimum, the existence of an agreement between two or more *legally distinct* actors to commit a tortious act. Here, all of the alleged individual co-conspirators—Silver, Caldwell, and Siler—are alleged to have acted as agents or affiliates of the same entities, and to have done so entirely within the scope of those roles. The Amended Complaint alleges the following:

- **RT Group and APP:** Silver is alleged to have been the sole principal of both RT Group and APP, and to have used both entities to fund and coordinate political consulting activities. (Am. Compl. ¶¶ 8–9, 45–46.) He allegedly directed APP to fund the purchase of the Domain (*Id.* ¶ 53) and exercised complete discretion over how APP funds were allocated for political work. (*Id.* ¶ 46.) Silver is also alleged to have worked "as an agent of APP" with Charles Siler to cause NoLabels.com Inc. to be incorporated in Delaware for the purpose of operating the Website. (*Id.* ¶ 16.) Caldwell and Siler are further alleged to have been paid consultants for both RT Group and APP during the relevant period. (*Id.* ¶¶ 45, 47.)

- **NoLabels.com Inc.:** Silver and Caldwell are alleged to have acted as agents for NoLabels.com Inc. in connection with the Website. (*Id.* ¶¶ 16, 18.) Although Silver is not alleged to have held a formal role in NoLabels.com Inc., he is alleged to have helped "cause" its incorporation and to have provided services—including website edits—that were ultimately used by the entity. (*Id.* ¶¶ 16, 57, 105.) Caldwell is similarly alleged to have provided services to NoLabels.com Inc., including editing the content that appeared on the Website. (*Id.* ¶¶ 18, 57, 104.) Siler is alleged to have incorporated NoLabels.com Inc. and served as one of its officers. (*Id.* ¶ 17.)

Under Delaware law, the individual defendants, including Silver, could not have been part of any actionable conspiracy with the entities they served, or with one another. "'[I]t is the general rule that the acts of the agent are the acts of the corporation'" and thus a corporation "'generally cannot be deemed to have conspired with its officers and agents.'" *Fortis Advisors LLC v. Johnson & Johnson*, No. Civ. A. 2020-0881-LWW, 2021 WL 5893997, at *7 (Del. Ch. Dec. 13, 2021) (quoting *Amaysing Technologies Corp. v. CyberAir Commc'ns, Inc.*, No. Civ. A. 19890-NC, 2005

WL 578972, at *7 (Del. Ch. Mar. 3, 2005)). The exception to the general rule is when an individual "'steps out of her role as an officer or agent and acts pursuant to personal motives.'" *Id*. But Plaintiff has not alleged that any of the individual defendants, including Silver, were acting pursuant to personal motives—rather, they allege that each of the actions taken in furtherance of the conspiracy were taken in their corporate roles as agents, officers, and affiliates. The fiduciary shield doctrine reinforces this principle by holding that acts undertaken in a person's corporate capacity cannot serve as a basis for personal jurisdiction over that individual. *See Mktg. Prods. Mgmt., LLC v. HealthandBeautyDirect.com, Inc.*, No. 02C-04-256 CLS, 2004 WL 249581, at *3 (Del. Super. Ct. Jan. 28, 2004).

The same principal applies to affiliates of entities under common control. Where entities operate under a "single decision-making source exercising definitive control," courts have rejected conspiracy claims against individual affiliates of those entities as futile. *See Homesource, Corp. v. Retail Web Servs., LLC*, No. 18-CV-11970, 2020 WL 12188147, at *15 (D.N.J. Mar. 30, 2020); *Anschutz Corp. v. Brown Robin Cap., LLC*, No. Civ. A. 2019-0710-JRS, 2020 WL 3096744, at *17 (Del. Ch. June 11, 2020). Similarly, the intra-corporate conspiracy doctrine bars claims among entities with overlapping directors or officers. *See Amaysing Technologies Corp. v. CyberAir Commc'ns, Inc.*, No. Civ. A. 19890-NC, 2005 WL 578972, at *7 (Del. Ch. Mar. 3, 2005); *In re Verestar, Inc.*, 343 B.R. 444, 483 (Bankr. S.D.N.Y. 2006).

The Amended Complaint identifies Silver, Caldwell, and Siler as acting in their respective roles as agents or affiliates of each of the entity defendants: NoLabels.com Inc., RT Group, and APP. None are alleged to have acted outside the scope of those roles or in pursuit of personal interests. Because agents and affiliates cannot conspire with their principal, or with one another while acting within the scope of those roles, they cannot form a legally cognizable conspiracy with

the entity defendants, or with each other. Likewise, Silver cannot conspire with RT Group, of which he was a manager, principal, and sole member. When one individual has exclusive authority over an entity, there is no legal separation sufficient to support conspiracy liability. Therefore, Silver, Siler, and Caldwell could not conspire with NL.com, RT Group, APP or each other.

Because all alleged actors were operating either within a single corporate structure or under the control of a single decision-maker, Plaintiff has failed to identify any legally independent party with whom any one of the individual defendants could have conspired. The absence of a distinct third party is fatal to Plaintiff's conspiracy jurisdiction theory, and accordingly, it cannot serve as a basis for personal jurisdiction against Silver.

### b. *Istituto Bancario* Factor 3: The incorporation of NoLabels.com Inc was not a "substantial act" capable of conferring conspiracy jurisdiction.

"The third *Istituto Bancario* factor . . . requires a plaintiff to show the actual occurrence ... in Delaware of a substantial act or effect in furtherance of the conspiracy." *Dan Dee Int'l, LLC v. Glob. New Ventures Grp. LC*, No. 23-CV-01274-GBW, 2024 WL 3043430, at *5 (D. Del. June 18, 2024) (internal quotation marks and citation omitted). The act in furtherance of the conspiracy must be "central," "integral," and "set in motion a series of events which form the basis for the cause of action before the court." *Republic Bus. Credit, LLC v. Metro Design USA, LLC*, No. Civ. A. N15C-09-233 JRJ, 2016 WL 3640349, at *7 (Del. Super. Ct. June 29, 2016) (internal quotation marks and citation omitted); *Fortis Advisors LLC* , 2021 WL 5893997, at *7; *Gibralt Cap. Corp. v. Smith*, No. 17422, 2001 WL 647837, at *6 (Del. Ch. May 9, 2001);.

Here, the "substantial act" identified by Plaintiff as having occurred in Delaware is the incorporation of NoLabels.com Inc. (Am. Compl. ¶ 19) ("[A] substantial act in furtherance of the conspiracy occurred in Delaware, namely the incorporation of Nolabels.com Inc.") But that ministerial step—which occurred long after the alleged conspiracy was in motion—was neither

central nor integral to the events giving rise to this suit. The Complaint makes clear that the entity's incorporation occurred in November 2023—months after the Domain was purchased, the idea for the Website had been conceived, and its contents drafted. Incorporation was merely one link in a longer chain of alleged activity that had been underway well before the entity was created. The alleged conspiracy could have proceeded exactly as described in Plaintiff's Amended Complaint even if NoLabels.com Inc. had never been incorporated. It was far from integral, and certainly did not set the alleged plan in motion. Plaintiff admits as much in the Amended Complaint: "Around the same time that APP purchased the NoLabels.com domain name, Siler was designing the 'copycat' website that would mimic No Labels' actual website, at nolabels.org. This was done to mislead and deceive the public about No Labels.") (Am. Compl. ¶ 54.)

Delaware courts have repeatedly held that the mere incorporation of an entity in Delaware cannot constitute the "substantial act" required for the conferral of conspiracy jurisdiction, unless the plaintiff's claims are a) "related to the act of incorporation" or b) "based upon Delaware corporate law." *Mktg. Prods. Mgmt., LLC*, 2004 WL 249581, at *2; *accord Republic Bus. Credit, LLC*, 2016 WL 3640349, at *7. Plaintiff's claims do neither. They are federal trademark and unfair competition claims, not corporate governance disputes, and they do not arise from the act of incorporation.

At most, NoLabels.com Inc. is alleged to have briefly held the Domain during its short life and to have been incorporated after the alleged scheme was already in motion. That is not a "substantial act" under Delaware law. It was a perfunctory step taken after the fact, not an act that set the alleged conspiracy in motion.

c. *Istituto Bancario* Factors 4 and 5: The incorporation of NoLabels.com Inc was not a "substantial act" capable of conferring conspiracy jurisdiction.

Even if Plaintiff could satisfy the formal elements of Delaware's conspiracy jurisdiction test under *Bancario*, its claims still fail under the constitutional due process component embedded within that standard. The "fourth and fifth *Istituto Bancario* elements address the constitutional [due process] prong of the test." *Konstantino v. AngioScore, Inc.*, No. Civ. A. 9681-CB, 2015 WL 5770582, at *7 (Del. Ch. Oct. 2, 2015) (quoting *Virtus Cap. L.P. v. Eastman Chem. Co.*, No. Civ. A. 9808-VCL, 2015 WL 580553, at *13 (Del. Ch. Feb. 11, 2015)). These elements evaluate whether "the defendant knew or had reason to know of the act in the forum state" and whether such act "was a direct and foreseeable result of the conduct in furtherance of the conspiracy." *Id.* at *10 (quoting *Istituto Bancario*, 449 A.2d at 225). They require allegations "from which one can infer that a foreign defendant knew or should have known that the conspiracy would have a Delaware nexus." *Id.* (quoting *Matthew v. Fläkt Woods Grp. SA*, 56 A.3d 1023, 1024 (Del. 2012)).

Plaintiff alleges no such nexus here. There is no allegation that Silver took any action in Delaware, directed any conduct at Delaware, or had reason to expect that any alleged harm would occur there. The target of the alleged conspiracy is a political organization based in Washington, D.C. All of the relevant activities alleged to have been taken by Silver—the funding of the purchase of the domain through APP, reviewing content for the website, and communicating with the co-defendants—all occurred outside Delaware. The allegedly infringing website was not directed at Delaware. It was created, designed, edited, and hosted outside of Delaware.

The only apparent Delaware connection is the incorporation of NoLabels.com Inc., but that step was taken by another individual after the core alleged conduct had already occurred. There is no plausible basis to infer that he knew or should have known the incorporation of an entity, undertaken by someone else after the relevant conduct began, would create any meaningful

20

connection to Delaware. Without conduct in the forum, harm in the forum, or a foreseeable forum nexus, the exercise of jurisdiction over Silver would violate the due process limitations embedded in the *Bancario* test.

## **CONCLUSION**

For all the foregoing reasons, defendant Joshua Silver respectfully asks the Court to dismiss the claims against him for lack of personal jurisdiction.

Dated this 16th day of May, 2025.

_/s/ Elizabeth  S.  Fenton_____
Elizabeth S. Fenton (Bar No. 5563)
**BARNES & THORNBURG LLP**
222 Delaware Avenue, Suite 1200
Wilmington, DE 19801-1058
Telephone: (302) 267-1515
Facsimile: (302) 300-3456
Email: efenton@btlaw.com

Daniel J. Blinka*
Xavier O. Jenkins*
**GODFREY & KAHN, S.C.**
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202-5615
Phone:  414-273-3500
Fax:  414-273-5198
dblinka@gklaw.com
xjenkins@gklaw.com
**Pro Hac Vice* Applications Forthcoming

*Counsel for Joshua Silver*